*Kevon Spencer v. State of Maryland*, No. 94, September Term, 2015. Opinion by Greene, J.

**CONSTITUTIONAL LAW—FOURTEENTH AMENDMENT—BATSON CHALLENGE**

A party may raise a *Batson* challenge when it perceives that opposing counsel is exercising peremptory strikes in a discriminatory manner to exclude jurors based on race or gender. *Batson v. Kentucky*, 476 U.S. 79, 97–98, 106 S. Ct. 1712, 1723–24, 90 L. Ed. 2d 69, 88–89 (1986). The *Batson* analysis requires: first, that the challenging party make a *prima facie* showing of unlawful discrimination; second, that the challenged party rebut the *prima facie* case by providing race neutral justifications for striking the jurors; and third, that the trial judge determine whether those justifications are valid or if they are a pretext for racial discrimination. *Gilchrist v. State*, 340 Md. 606, 625–27, 667 A.2d 876, 885–86 (1995).

Defense counsel for Spencer was able to articulate valid, race neutral explanations for striking white jurors, based on occupation and age. However, the trial judge found those reasons were not legitimate and that counsel's peremptory strikes were a pretext for racial discrimination due to counsel's alleged pattern of discrimination. The judge's beliefs, which he perceived to be developed in other trials and demonstrated in the present case, were disputed and not documented on the record. Therefore, the appropriate disposition in this case is a reversal. On the basis of the record developed in these proceedings, the trial judge was clearly erroneous in finding that counsel's explanations for making peremptory strikes were a pretext for racial discrimination. Accordingly, a remand to develop new evidence of purposeful discrimination is neither appropriate nor in the interest of justice.

In addition, we hold that Spencer is entitled to a reversal of the conviction of attempted murder in the second-degree. The evidence presented in the State's case in chief was legally insufficient to establish that Spencer possessed the requisite specific intent to kill to sustain the conviction.

Circuit Court for Dorchester County
Case No. 09-K-13-15062
Argued: September 8, 2016

IN THE COURT OF APPEALS

OF MARYLAND

No. 94

September Term, 2015

_____

KEVON SPENCER

v.

STATE OF MARYLAND

_____

Barbera, C.J.
Greene,
Adkins,
McDonald,
Watts,
Hotten,
Getty,

JJ.

_____

Opinion by Greene, J.
Barbera, C.J., dissents in part.
Watts, J., concurs and dissents.
McDonald and Getty, JJ., dissent.
.

_____

Filed: November 29, 2016

In this case, Petitioner, Kevon Spencer ("Spencer"), challenges the trial judge's finding that defense counsel's explanations for striking jurors, in light of a *Batson* Challenge, were a pretext for racial discrimination. *Batson v. Kentucky*, 476 U.S. 79, 97–98, 106 S. Ct. 1712, 1723–24, 90 L. Ed. 2d 69, 88–89 (1986). Spencer argues that defense counsel provided valid, race neutral explanations; however, the trial judge did not point to evidence, on the record, to support the court's finding that the challenged party's explanation was a pretext for racial discrimination. Thus, the presiding judge, at best, made a conclusion based upon disputed facts that were not properly made a part of the record. In addition, the evidence was insufficient to satisfy the element of specific intent to kill which is necessary to sustain a conviction of second-degree attempted murder. Accordingly, we shall reverse the judgment of the Court of Special Appeals and direct that the case be remanded for a new trial as to all remaining counts except for the count charging attempted second-degree murder.

## FACTUAL AND PROCEDURAL BACKGROUND

### The Chase

The relevant facts are taken from evidence and testimony presented at trial. On the afternoon of June 20, 2013, at approximately 4:00 p.m., Detective Priscilla Rogers saw an individual, the Defendant, later identified as Spencer, a twenty-one year old African-American male, driving a red Kia Soul on Sharptown Road in Dorchester County. Detective Rogers was driving her patrol car on Eldorado Road, Route 14. At the intersection of the two roads, she observed Spencer fail to stop at the stop sign. She applied her breaks suddenly to avoid having a collision and then turned and pulled behind the red

Kia, activating her lights and siren. In response to the attempted stop, Spencer accelerated and at times reached speeds between eighty and more than 100 miles per hour. Detective Rogers testified that Spencer did this in an "attempt to get away from [her]." Detective Rogers called for assistance. Corporal Wendell Garrison and Deputy Christopher Tolley soon joined the pursuit.

Spencer was intoxicated and chased by three police cars for twelve miles. The officers testified that Spencer did not show any signs of stopping. Throughout the pursuit, he was driving at high speeds, weaving between vehicles, making "abrupt turns", and driving in the opposing traffic lane. Detective Rogers testified that Spencer nearly collided with other cars when he was driving and facing oncoming traffic. Corporal Garrison testified that the pursuit took place in "a dense heavily populated area[.]"

The three officers attempted to "box in" Spencer. Deputy Tolley was between the right driving lane and the shoulder and was half of a car's length in front of the Kia. Detective Rogers was behind the Kia on the correct side of the road. Corporal Garrison was driving beside the group, in the opposing traffic lane. At this point, Spencer was driving the Kia on the right side of the road and at times on the paved shoulder.

In response to the "box in" Spencer accelerated and drove onto the grass and paved shoulder and collided with cyclist Andrew Kinn (Kinn), who was walking his bicycle off the road apparently in order to get out of the way of the chase. Spencer's car clipped Kinn on the left leg, causing him to be thrown into the air and land on the windshield. Kinn suffered serious injuries. Doctor Cory Carpenter testified that the likely point of impact

with the vehicle was Kinn's left leg; most of the other fractures in the back and on the shoulder likely resulted from being hurled into the air and landing onto the hood.

All three officers testified that they saw Kinn before the collision. Detective Rogers testified she saw Kinn "probably two telephone pole lengths away" and that "[h]e had on a bright yellow shirt . . . [with] multiple flags flying from the back of his bicycle." Corporal Garrison stated that because "his Tahoe sits a little higher than other vehicles, [he] could see everything from [his] vantage point" and he first saw Kinn "three light poles away" in a "bright shirt" with "flags on the bike". Deputy Tolley testified that he saw Kinn when he was "heading towards the pursuit" because he was joining the pursuit from the opposite direction. Further, Corporal Garrison testified that Spencer had two options to avoid hitting Kinn: (1) drive into the ditch or (2) use the "avenue of escape" by attempting to go around Deputy Tolley's car, which was half of a car length in front of his car, by getting into the opposing traffic lane.

Before the collision, the passengers in the vehicle were becoming increasingly panicked. Detective Rogers testified that the occupants were "moving around constantly." Keevin Robinson (Robinson), the passenger who sat directly behind Spencer in the Kia, testified that throughout the chase the occupants were screaming for Spencer to stop and pull over.

Robinson testified it was "[n]o longer than 2 seconds" from the moment he first saw the cyclist to the moment of collision: "It was a last minute thing. By the time I seen him, it was boom, he was hit. I seen him, then I didn't [see] him, and that's the honest truth." He stated that he was sure he must have been screaming for Spencer to stop, but indicated

- 3 -

that he did not have "enough [] time to stop him or do something about it." Moreover, Robinson noted that Spencer never indicated that he intended to hit Kinn, or anyone else, nor did he acknowledge that he had seen the bicyclist.

After the collision, Deputy Tolley testified that Spencer "swerved back onto the road and traveled across the paved shoulder, the driving lane, the west bound lane, the eastbound lane, and then the paved shoulder on the other side and went off the roadway." At this point, Deputy Tolley approached Spencer, "drove into the rear of him", and "shoved him up onto the railroad tracks to disable [sic] so he wasn't able to drive off." Spencer attempted to escape on foot. He was arrested a short time later when Deputy Tolley, with the assistance of Corporal Garrison, tackled and tazed him. Spencer also told Detective Rogers, "I'm still fucked up." At trial, Robinson testified he "blacked out" and "couldn't remember" how the car came to a stop. During his sentencing statement, Spencer apologized to the victim and also indicated that he did not know what was going through his mind and that the drugs had him "blind" and caused him to black out.

**Jury Selection and Trial**

During jury selection, the State approached the bench and indicated to the court that defense counsel was striking mostly white males and females, specifically four of them, and requested that defense counsel put on the record the reasons for those strikes. The court responded:

> THE COURT: All right. [Defense counsel], you've been playing with this for a long time in your other trials. The Court has noticed a pattern of striking white[,] mostly male jurors, even jurors who have not answered a question. I'm going to require you to explain your rationale or striking. We'll start with juror number 165.

- 4 -

Defense counsel stated that he was striking juror 165 because the juror "indicated that he knew one of the detectives who was going to be testifying, a sister of a friend." The court responded by asking about juror 166. Defense counsel responded: "I tend to strike farmers every opportunity I get." The court asked why he would tend to do that, to which Defense counsel stated that based on his life experience he finds that "they are not fair and impartial[.]" The judge then turned to juror 168. Counsel responded that he "did not answer a question and also indicated merely that he was self-employed"; additionally, he is fifty-eight years old and counsel stated he tends to strike older people when there is not sufficient information to determine if it would be a good idea to have them on the jury. The judge inquired as to age when he asked if age was a protected class for purposes of *Batson*, to which the defense counsel stated no. The judge did not seem satisfied as he stated: "[b]ut you have to have a rational basis. You have to identify for me a rational basis for your strike. Are you telling me that you strike older white people because they happen to be white and they happen to be older[?] . . . Can you articulate for me why an older person would not be a qualified juror?"

> [DEFENSE COUNSEL]: My understanding is that and my life experience is that those people who are older tend to be more law abiding. It's the same reason that the State is permitted to, without a *Batson* challenge being sustained, to strike young people. They routinely do [so] because the law has determined that young people lack the life experience to follow the law. My experience is that people who are of substantial age tend to credit law-enforcement, and to credit the system to a degree that ultimately affords an unfairness to my client.

The State noted to the court that there were two black males who were older than fifty-eight years of age that had not been struck by counsel. Defense counsel responded:

[DEFENSE COUNSEL]: The individuals who are on the jury are all younger than juror 168. The oldest individual who is on the jury at present is juror number 63. The reason that I permitted juror 63 to be on the jury is that he indicated that he has a family member who has been charged and sentenced, in other words my expectation is he would have a better understanding of my client than would other individuals similar [sic] situated. Juror number 63 answered – juror number 176 answered questions and he is not similarly situated to juror number 58. He answered questions, he provided additional information that led me to believe he would be an advantageous juror for the purposes of my client's situation.

I permitted juror -- and just to be clear I permitted juror number 6 who is a 30-year-old white male to be seated on the jury. The reason I permitted the 30-year-old white male to be seated on the jury is because he's 30 years of age. I have no problem with the white people on the jury. Ask the record to reflect I'm a white male.

THE COURT: What you have articulated for me is that you believe older people are more law abiding and would favor as you quote the system, and what the State's Attorney is bringing up is you have not struck older African-Americans.

[DEFENSE COUNSEL]: There's one older African-American individual on this jury right now. That one older African-American individual who is 63 years of age responded to questions and indicated that he had, I believe he has a son whose name is Elmer Young who has been sentenced and is presently either away or is presently pending trial. I think I have actual knowledge that he's pending trial. I don't know who represents him. I don't represent him, but I know for a fact Elmer Young is involved in the criminal justice system at present. He's the only individual who is older than 60 years of age. The only individual who is older than 58 years of age who I did not strike. There are two white women and a there's a white man on the jury so far.

The judge then turned to juror number 191. Defense counsel stated he struck him because in his life experience he tends to strike mechanics, in addition to farmers, and this man was a mechanic. The judge did not inquire as to why he was striking farmers and mechanics. However, the judge stated, "[l]et me ask you this. In your life experiences do you tend to

strike white people when a defendant is a black person?" The judge then made references

to a previous trial with defense counsel.

> THE COURT: Are you telling me that as an officer of the court -- that race has played no part in your decision to strike a juror notwithstanding the fact that every juror you struck has been white? Every juror you struck on our trial on Monday was white.

> [DEFENSE COUNSEL]: I don't have an actual recollection if that was true as to Monday, Your Honor, if you have an actual recollection.

> THE COURT: The Court's seen the pattern.

> [DEFENSE COUNSEL]: Your Honor, I believe on Monday --

> THE COURT: And has the records.

> [DEFENSE COUNSEL]: On Monday I believe that I struck African-American individuals.

> THE COURT: I don't think so.

> [DEFENSE COUNSEL]: The vast majority of the venire is white so the fact that I tended to strike white people is not surprising given that the vast majority of the voir dire is white.

> THE COURT: It's surprising to the Court in that if your decision is not color based, as you say, that you have been unable really to articulate any other reason that this Court finds acceptable. You first laid it on age.

> [DEFENSE COUNSEL]: And I maintain that.

> THE COURT: But the Court doesn't agree with that being the pattern in this particular case.

At this point counsel and defendant returned to the trial table and the following discussion

ensued in open court:

> THE COURT: Here's a question I have for you, here's an example of what makes the Court highly suspicious regarding your motivations and your rationale . . . [juror] number 176, is a 63-year-old African-American male

who answered questions indicating that he had some relatives that had been convicted in the past, that would not make a difference in his decision-making. His juror occupation is noted as retired. So there is no designation as to what his employment was. You gave me one of your rationales that you have a concern when somebody doesn't list their employment. Well, we don't know what he was retired from nor did you ask that during the voir dire process . . . . I'm asking you, I mean a person who is retired and doesn't designate what they're retired from, maybe he's a retired self-employed person.

[DEFENSE COUNSEL]: When a prospective juror responds to certain questions that overcome concerns that I might have about the nature of their employment, I'm going to seat that juror.

Thus, the Defense counsel indicated he struck jurors 166 and 191 because of their professions as a farmer and mechanic. Further, he struck juror 168 because the juror did not list his occupation and is an older person. Counsel explained that he believed older jurors are less sympathetic to defendants; however, he did not strike two other older African-American jurors because they had family members who were either charged or convicted of crimes; thus, they would be more sympathetic to the defendant. The court then ruled on the *Batson* challenge and reseated jurors 166, 168, and 191:

THE COURT: [T]he Court believes that it could find there has been something other than a rational basis for some of the strikes exercised by [defense counsel]. The Court finds particularly and does not accept his explanation regarding juror number 166 who did not answer any questions who listed his occupation as a farmer and is age 45. The Court would find the same with respect to juror number 168 who listed self-employed, age 58, who answered no questions. And the Court could find the same with respect to juror number 191 who is 45 years of age and a mechanic . . . For the record the Court is making the finding that it appears by practice the defense attorney in this case is exercising peremptory challenges based on race.

The trial took place on January 8, 2014 and January 9, 2014 in the Circuit Court for Dorchester County. The jury convicted Spencer of attempted second-degree murder, first-

degree assault, two counts of second-degree assault, three counts of malicious destruction of property, and various traffic violations. On March 10, 2014, he was sentenced to fifty-eight years in prison. Spencer's notice of appeal was timely filed on April 8, 2014. Spencer appealed his conviction of attempted second-degree murder and on the basis of the *Batson* challenge. In an unreported opinion, the Court of Special Appeals affirmed the judgment of the Circuit Court for Dorchester County as to count one, concluding that the evidence did establish that Spencer formed the specific intent to kill for the attempted second-degree murder.[1] The majority of the intermediate appellate court found that the trial judge was not clearly erroneous in reseating jurors 166, 168, and 191. The majority held it was difficult, if not impossible, to objectively verify the trial court's determination based on the credibility of defense counsel. However, the trial court's ruling on the *Batson* claim was not largely derived from the judge's experience in previous cases, rather it was related to the specific facts of that particular venire and those particular peremptory strikes. One judge dissented, and stated: "I would hold that the court erred in relying here on its impressions—not because they are an impermissible source of data for a pretext finding,

---

[1] The State charged Spencer, by criminal information, in the Circuit Court with numerous criminal and traffic offenses. He was convicted of attempted second-degree murder of Andrew Kinn, second-degree assault of Detective Rogers and Corporal Garrison, three counts of malicious destruction of property valued over $500, and numerous traffic related offenses. The Court of Special Appeals affirmed Spencer's convictions for attempted murder and assault, but reversed his conviction for malicious destruction of property over $500. The intermediate appellate court directed the Circuit Court on remand to enter judgment of conviction for malicious destruction of property valued under $500, "along with the appropriate sentence."

but because there was no support in this record and no way for us to review, even for clear error, the court's findings regarding counsel's tactics in other cases."

Spencer filed a petition for writ of certiorari in this Court. We granted *certiorari* to answer the following questions:

1. Did the trial court commit reversible error by reseating three jurors who had been struck by the defense where there was no evidence to support a finding of racial discrimination and where counsel's explanations advanced the defense's strategy and have previously been accepted by the courts as valid, race-neutral explanations for striking a juror?

2. Was the evidence sufficient to support a finding of specific intent for a conviction of attempted second-degree murder?

*Spencer v. State*, 446 Md. 218, 130 A.3d 507 (2016).

We hold that the trial judge's *Batson* determination was improper because the judge reseated jurors struck by defense counsel in light of valid, race neutral justifications and there was no support in the record or any way for an appellate court to review the alleged disputed facts. Thus, trial judge's finding that defense counsel's peremptory challenges, based on a practice developed in other trials and demonstrated in the present trial, were a pretext for racial discrimination was clearly erroneous. In addition, we hold that the evidence was insufficient for a rational trier of fact to find beyond a reasonable doubt specific intent for the crime of attempted second-degree murder. Accordingly, we shall reverse the judgment of the Court of Special Appeals.

## STANDARD OF REVIEW

At issue is the trial judge's finding that the reasons offered for the striking of particular jurors was a pretext for discrimination. We have previously stated:

These determinations made by the trial court are essentially factual, and therefore are "accorded great deference on appeal," *Hernandez v. New York, supra,* 500 U.S. at 364, 111 S.Ct. at 1868–1869, 114 L.Ed.2d at 408–409; *Batson v. Kentucky, supra,* 476 U.S. at 98 n. 21, 106 S.Ct. at 1724 n. 21, 90 L.Ed.2d at 89 n. 21; *Chew v. State, supra,* 317 Md. at 245, 562 A.2d at 1276. An appellate court will not reverse a trial judge's determination as to the sufficiency of the reasons offered unless it is clearly erroneous. *Stanley v. State, supra,* 313 Md. at 84, 542 A.2d at 1283. *See also Purkett v. Elem, supra,* 115 S.Ct. at 1771, 131 L.Ed.2d at 840.

*Gilchrist v. State*, 340 Md. 606, 627, 667 A.2d 876, 886 (1995).

Md. Rule 8-131(c) provides that "the appellate court will review the case on both the law and the evidence. It will not set aside the judgment of the trial court on the evidence unless clearly erroneous, and will give due regard to the opportunity of the trial court to judge the credibility of the witnesses." Moreover, "[i]f any competent material evidence exists in support of the trial court's factual findings, those findings cannot be held to be clearly erroneous. . . . Our initial task, therefore, is to determine whether the Circuit Court's factual findings are supported by substantial and credible evidence in the record." *Webb v. Nowak*, 433 Md. 666, 678, 72 A.3d 587, 594 (2013).

As to the sufficiency of evidence to support a conviction for attempted second-degree murder this Court has held:

The standard of review for appellate review of evidentiary sufficiency is whether any rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt. *See State v. Albrecht*, 336 Md. 475, 478–79, 649 A.2d 336, 337 (1994). We view the evidence in the light most favorable to the prosecution. *See id.* (citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979) and *Branch v. State*, 305 Md. 177, 182–83, 502 A.2d 496, 498 (1986)). We give "due regard to the [fact finder's] finding of facts, its resolution of conflicting evidence, and, significantly, its opportunity to observe and assess the credibility of witnesses." *McDonald v. State*, 347 Md. 452, 474, 701 A.2d

675, 685 (1997), *cert. denied*, 522 U.S. 1151, 118 S.Ct. 1173, 140 L.Ed.2d 182 (1998) (quoting *Albrecht*, 336 Md. at 478, 649 A.2d at 337).

*Harrison v. State*, 382 Md. 477, 487–88, 855 A.2d 1220, 1226 (2004).

## DISCUSSION

Spencer contends that the judgment of the Court of Special Appeals should be reversed, because the trial judge did not point to evidence on the record for rejecting counsel's race neutral explanations which advanced the defense's strategy and have previously been accepted by courts as valid, race neutral explanations for striking a juror. Spencer posits that the presiding judge rejected defense counsel's explanation due to an alleged pattern of discrimination, but did this solely on the basis of a previous trial, to which the judge referred. Moreover, even if the judge's finding was grounded in something more than this pattern, the finding was clearly erroneous as the defense counsel's explanations have long been recognized as valid justifications for exercising peremptory strikes. In his brief, Spencer contends: "[A] trial judge's decision to resolve a *Batson* issue by relying upon an undocumented and unreviewable intuition prevents appellate courts from performing their duty to review for clear error. . . . Finally, reversal, not remand, is the appropriate remedy where further development of the record is not likely and remand would only afford the prosecution an unwarranted second chance to satisfy its burden of proof." Furthermore, Spencer maintains that based on the circumstantial evidence, there was no reasonable inference that could establish he possessed a specific intent to kill Kinn because Spencer did not see the cyclist when he veered onto the shoulder, passenger Robinson only noticed Kinn two seconds before impact, Spencer only intended to escape

- 12 -

the pursuit from officers rather than hit the cyclist, and his reckless driving was not enough to establish specific intent to kill.

The State, however, argues that the trial judge was not clearly erroneous when he found defense counsel's explanation of his preemptory strikes unconvincing as counsel's exercise of jury strikes in other proceedings was a legitimate fact for the court to consider. Further, in Dorchester County farming is a leading vocation and counsel should not have struck juror 166 on that basis. Moreover, counsel did not strike older black jurors. Furthermore, the evidence was sufficient to support a finding of specific intent for a conviction of attempted second-degree murder. The State asserts, through circumstantial evidence, the jury was permitted to infer Spencer was aware of Kinn's presence because the other drivers saw him. The State further stated that Spencer could have avoided the collision by slowing down, there was an avenue of escape, hitting Kinn could have aided his escape, and he was warned to stop by passenger Robinson.

### *Batson* **Challenge**

The Equal Protection Clause of the Fourteenth Amendment prohibits the exclusion of jurors based on race or gender. The Supreme Court held, in *Batson v. Kentucky*, that jurors "must be indifferently chosen, to secure the defendant's right under the Fourteenth Amendment to protection of life and liberty against race or color prejudice." *Batson*, 476 U.S. at 86–87, 106 S. Ct. at 1717–18, 90 L. Ed. 2d at 81 (internal quotation and citation omitted). *See also* U.S. CONST. amend. XIV; MD. CONST. DECL. OF RTS. art. 24. Therefore, counsel in a criminal prosecution, may not use peremptory challenges to exclude jurors based on race or on the assumption that a juror will not be impartial on

- 13 -

account of his or her race. *Tyler v. State*, 330 Md. 261, 266, 623 A.2d 648, 651 (1993). *See also Gilchrist*, 340 Md. at 625, 667 A.2d at 885 (holding under the Equal Protection Clause of the Fourteenth Amendment and Article 24 of the Maryland Declaration of Rights, "peremptory challenges may not be exercised on the basis of race"). *Batson* protection applies to persons of all races. The *Batson* Court enumerated the underlying policy rationales:

> Racial discrimination in selection of jurors harms not only the accused whose life or liberty they are summoned to try. Competence to serve as a juror ultimately depends on an assessment of individual qualifications and ability impartially to consider evidence presented at a trial . . . [B]y denying a person participation in jury service on account of his race, the State unconstitutionally discriminate[s] against the excluded juror . . . The harm from discriminatory jury selection extends beyond that inflicted on the defendant and the excluded juror to touch the entire community. Selection procedures that purposefully exclude black [or white] persons from juries undermine public confidence in the fairness of our system of justice.

*Batson*, 476 U.S. at 87, 106 S. Ct. at 1718, 90 L. Ed. 2d at 81.

*Batson* outlined a three-step process for evaluating when counsel has used peremptory challenges in a manner that violates the Equal Protection Clause. This Court first applied *Batson* in *Stanley v. State*, 313 Md. 50, 542 A.2d 1267 (1988). In *Gilchirst*, we affirmed, in modified form, the three-step *Batson* analysis holding that when a prosecutor accuses defense counsel of unconstitutionally striking jurors based on race: first, the prosecutor must make a *prima facie* case of discrimination; second, if that burden is met, defense counsel must provide racially neutral justifications for the strikes; third, the trial judge must determine whether those justifications are valid or if they are a pretext to unconstitutional discrimination.

First, the complaining party has the burden of making a *prima facie* showing that the other party has exercised its peremptory challenges on an impermissibly discriminatory basis, such as race or gender. . . .

Second, once the trial court has determined that the party complaining about the use of the peremptory challenges has established a *prima facie* case, the burden shifts to the party exercising the peremptory challenges to rebut the prima facie case by offering race-neutral explanations for challenging the excluded jurors. The explanation must be neutral, related to the case to be tried, clear and reasonably specific, and legitimate. The reason offered need not rise to the level of a challenge for cause . . . It is insufficient, however, for the party making the peremptory challenges to merely deny that he had a discriminatory motive or merely affirm his good faith.

Finally, the trial court must determine whether the opponent of the strike has carried his burden of proving purposeful discrimination. This includes allowing the complaining party an opportunity to demonstrate that the reasons given for the peremptory challenges are pretextual or have a discriminatory impact . . . [A]t that stage, implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination.

While the complaining party has the ultimate burden of proving unlawful discrimination, and therefore should be offered the opportunity to demonstrate that the reasons offered were merely pretextual, the court may find that the reasons offered were pretexts for discrimination without such demonstration from the complainant.

*Gilchrist*, 340 Md. at 625–27, 667 A.2d at 885–86 (internal quotations and citations omitted).

In the instant case, the parties do not dispute that the State satisfied its burden of proving a *prima facie* case of racial discrimination when it raised the concern of mostly white jurors being stricken. The parties also do not dispute that the defense provided racially neutral explanations for striking each of the jurors based on occupation and age. The issue raised is whether the State carried its burden of proving defense counsel's explanations for the strikes were pretextual. The parties limit the issue to step three of the

- 15 -

*Batson* analysis. The State, in its brief, notes, "[t]his case addresses the third step, which is reviewed only for clear error[]." Spencer contends, "[i]t is not until the third and final step in the process that the trial judge is called upon to evaluate the persuasiveness of the proffered reasons and make an assessment of pretext." It is at step three that the "trial court must determine whether the opponent of the strike has carried his burden of proving purposeful discrimination." *Gilchrist*, 340 Md. at 625–27, 667 A.2d at 885–86. As the Supreme Court explained in *Purkett*, "once the opponent of a peremptory challenge has made out a prima facie case of racial discrimination . . . If a race-neutral explanation is tendered, the trial court must then decide (step 3) whether the opponent of the strike has proved purposeful racial discrimination." *Purkett v. Elem*, 514 U.S. 765, 767, 115 S. Ct. 1769, 1770–71, 131 L. Ed. 2d 834, 839 (1995). Our analysis, therefore, focuses on step three of the *Batson* analysis.

## Trial Court's Determination

A *Batson* challenge requires a judge to make factual findings; this does not require an attorney to swear an oath and subject himself to cross-examination regarding the reasons for his strikes. Ordinarily, a bench conference is sufficient. *Gray v. State*, 317 Md. 250, 258–61, 562 A.2d 1278, 1282–83 (1989). In the case at bar, the prosecutor approached the bench and indicated to the court that defense counsel was striking mostly white males and females, and requested that defense counsel put on the record the reasons for those strikes. Similarly, in *Ray-Simmons* "[w]hen . . . [the challenging party] asserted a *Batson* violation, the court turned its attention to the [challenged party], who immediately provided an explanation for each of the [] peremptory strikes." *Ray-Simmons v. State*, 446 Md. 429,

443, 132 A.3d 275, 283 (2016) (holding the challenging party satisfied its burden of producing a *prima facie* case because the challenged party exercised five peremptory challenges to remove African American men). Moreover, in *Ray-Simmons*, the challenged party, "by proffering an explanation for each of its strikes, moved the *Batson* inquiry to step two . . . those explanations automatically moved the *Batson* inquiry from the first to the second step." *Ray-Simmons*, 446 Md. at 443–44, 132 A.3d at 283–84. *See also Edmonds v. State*, 372 Md. 314, 332, 812 A.2d 1034, 1044 (2002) ("Turning to the merits of petitioner's *Batson* challenge, we note first that step one, whether petitioner has made a prima facie showing that the State's challenges were racially motivated, is not at issue in this case. The issue is moot because the State offered explanations for its peremptory challenges[.]").

Further, Spencer provided race neutral explanations for striking jurors 166, 168, and 191. A challenged party's explanation does not have to be "persuasive, or even plausible." *Purkett*, 514 U.S. at 767–68, 115 S. Ct. at 1771, 131 L. Ed. 2d at 839. The Supreme Court has held "[u]nless a discriminatory intent is inherent in the [defense counsel's] explanation, the reason offered will be deemed race neutral." *Hernandez v. New York*, 500 U.S. 352, 360, 111 S. Ct. 1859, 1866, 114 L. Ed. 2d 395, 406 (1991). *See also Purkett*, 514 U.S. at 769, 115 S. Ct. at 1771, 131 L. Ed. 2d at 838 ("What it means by a 'legitimate reason' is not a reason that makes sense, but a reason that does not deny equal protection."). Our Court has stated that the challenged party must provide an explanation that is race neutral, not one that is necessarily believable. *Edmonds v, State*, 372 Md. 314, 332, 812 A.2d 1034, 1044.

Under the facts of the case at bar, defense counsel provided race neutral explanations to the trial court for the peremptory challenges as he believed the jurors stricken could not be fair or impartial. Counsel struck juror 168 due to age, he was fifty-eight years old, and because he did not list his occupation. Juror 166 was stricken because of his employment as a farmer. Juror 191 was also stricken due to his employment; he was a mechanic.

In *Purkett*, the prosecutor's proffered explanation for a peremptory challenge of a black male juror was that he had long, unkempt hair, and a moustache and a beard which the prosecutor believed made him "not [] a good juror" and appear "suspicious"; the court deemed this race neutral and it satisfied the prosecution's burden of articulating a nondiscriminatory reason for the strike. *Purkett*, 514 U.S. at 769, 115 S. Ct. at 1770, 131 L. Ed. 2d at 838. In *Rice v. Collins*, 546 U.S. 333, 341, 126 S. Ct. 969, 975, 163 L. Ed. 2d 824, 833 (2006) the prosecutor stated a concern that a black juror might, as a young and single citizen with no ties to the community, be too tolerant of drug crimes. The Supreme Court found this was a valid, race neutral justification for striking the juror. 546 U.S. at 341, 126 S. Ct. at 975, 163 L. Ed. 2d at 833 ("It is not unreasonable to believe the prosecutor remained worried that a young person with few ties to the community might be less willing than an older, more permanent resident to impose a lengthy sentence for possessing a small amount of a controlled substance. . . . Even if the prosecutor was overly cautious in this regard, her wariness of the young and the rootless could be seen as race neutral, for she used a peremptory strike on a white male juror, Juror 6, with the same characteristics."). Further, in *Bridges v. State*, 116 Md. App. 113, 133, 695 A.2d 609, 619 (1997), the "State's peremptory challenges in [that] case based on the ages of the prospective jurors were truly

- 18 -

peremptory and needed no justification. *Batson* does not apply to age-based peremptories."

This Court has also acknowledged that age is a valid race neutral explanation:

> In *Harley v. State*, 341 Md. 395, 398, 671 A.2d 15, 16 (1996), the prosecutor told the court that she had a "general rule" of challenging jurors who were single and under thirty, a policy with no apparent connection to the circumstances of the case or the individual jurors. The prosecutor explained that she preferred to seat jurors over thirty years old and married because she believed that jurors with those characteristics were more stable and therefore more state-oriented. *See id.* at 402, 671 A.2d at 19. The trial court found the prosecutor's explanation race-neutral and non-pretextual. We affirmed, holding that we 'cannot conclude that the trial judge's findings were clearly erroneous.' *Id.* at 404, 671 A.2d at 19.

*Edmonds*, 372 Md. at 335–36, 812 A.2d at 1046. Similarly, here, defense counsel indicated that he struck juror 168 based on his age: "[m]y experience is that people who are of substantial age tend to credit law-enforcement, and to credit the system to a degree that ultimately affords an unfairness to my client." Counsel also pointed out that he permitted Juror 6, a thirty year old white male, to remain on the jury due to his young age because he could be beneficial to his client.

In *Parker v. State*, 365 Md. 299, 304–09, 778 A.2d 1096, 1099–101 (2001), counsel's employment concern was considered a race neutral explanation where counsel struck a juror, a criminal assignment officer, because she might be less sympathetic and was exposed to criminal cases every day. "[T]he trial court erred in rejecting the facially-valid, race-neutral reasons tendered by defense counsel for exercising the peremptory strikes and reseating the two stricken jurors on the panel"; therefore, the defendant's conviction was reversed and a new trial was ordered. *Parker*, 365 Md. at 309–10, 778 A.2d at 1101–02 (finding that the record did not support discrimination as one juror could

be more sympathetic and the other juror indicated his doctor's appointment was an "absolutely compelling reason" and made it "impossible" for him to serve). We noted that the trial judge merely stated the reasons were unacceptable because both jurors indicated they could be fair and "[w]ithout further explanation or making additional findings" he reseated the jurors. *Parker*, 365 Md. at 310, 778 A.2d at 1102. Similarly, Spencer in his brief, notes that farmers have deep generations-long community ties as their profession is tied to the land. It is not unreasonable to believe that having such ties would make such a juror less likely to sympathize with criminal defendants. *See Rice*, 546 U.S. at 341, 126 S. Ct. at 975, 163 L. Ed. 2d at 833 (noting that it is reasonable "to believe the prosecutor remained worried that a young person with few ties to the community might be less willing than an older, more permanent resident to impose a lengthy sentence for possessing a small amount of a controlled substance."). Spencer also notes that there was automobile damage to police vehicles and this valuation of damages was critical to charges that Spencer faced; thus, a mechanic would have extensive automobile knowledge and it was not unreasonable to believe that the juror might not be impartial.

In *Edmonds*, counsel's striking of all jurors with relatives convicted of a crime did not amount to unconstitutional discrimination. *Edmonds*, 372 Md. at 333–34, 812 A.2d at 1044–45 ("Our research has uncovered no court that has held as inherently discriminatory a peremptory strike based on a juror having a relative convicted of a crime. A criminal conviction or having a relative convicted of a crime is not a 'characteristic' peculiar to any race."). In that case the defendant argued it was an improper remedy for the trial court to not reseat two improperly stricken jurors. *Edmonds*, 372 Md. at 326, 812 A.2d at 1041.

- 20 -

Defendant wanted jurors Ashe and Smith reseated but the trial judge did not say why he would not reseat them. *Edmonds*, 372 Md. at 324–26, 812 A.2d at 1039–40. This Court held that the trial court failed to satisfy step three of the *Batson* analysis as to those two jurors: "we cannot tell from this record whether the trial court believed the prosecutor's explanations." *Edmonds*, 372 Md. at 338, 812 A.2d at 1048 (noting that it was unclear whether the judge found the explanation credible as he first stated he did not buy the explanation, but later stated the explanation could be legitimate). This Court further stated:

> [O]n this record, we are not prepared to conduct the important factual analysis required under step three. *Batson's* final step is essentially a credibility assessment, and the parties are not before this Court to permit us to judge their credibility or to explore the validity of any arguments they may advance. We hold that the trial court failed to conduct a proper *Batson* analysis by not making a final determination regarding the credibility of the prosecutor's race-neutral explanations and therefore whether petitioner established purposeful discrimination in the strikes of jurors Ashe and Smith."

*Edmonds*, 372 Md. at 339, 812 A.2d at 1048. In the case *sub judice*, rather than strike jurors with family members affected by the criminal justice system as the prosecutor in *Edmonds* did, defense counsel here chose to keep jurors 63 and 176 because of their family's experience with the criminal justice system. When the trial judge asked counsel why these jurors, who were older than juror 168, were not stricken, defense counsel was able to articulate clearly that they were "advantageous" and likely to be sympathetic towards the defendant.

Moreover, because the trial judge's finding of pretext is factual, the decision as to sufficiency of the reasons will not be reversed by an appellate court unless the trial judge's decision was clearly erroneous. *Gilchrist*, 340 Md. at 627, 667 A.2d at 886. "[T]he

- 21 -

ultimate question of discriminatory intent represents a finding of fact of the sort accorded great deference on appeal[.]" *Hernandez*, 500 U.S. at 353, 111 S. Ct. at 1863, 114 L. Ed. 2d at 401. However, while deference is given to the trial court, "deference does not imply abandonment or abdication of judicial review. In the context of the threshold examination in this *Batson* claim, it can suffice to support the issuance of a [certificate of appealability] to adduce evidence demonstrating that, despite the neutral explanation of the prosecution, the peremptory strikes in the final analysis were race based." *Miller-El v. Cockrell (Miller-El I)*, 537 U.S. 322, 324, 123 S. Ct. 1029, 1033, 154 L. Ed. 2d 931, 942 (2003).

The trial court must decide whether that explanation is legitimate or pretextual. *Purkett*, 514 U.S. at 768, 115 S. Ct. at 1771, 131 L. Ed. 2d at 839. A trial judge can make a credibility assessment of the challenged party's explanation "by the [challenged party's] demeanor; by how reasonable, or how improbable, the explanations are; and by whether the proffered rationale has some basis in accepted trial strategy." *Miller-El I*, 537 U.S. at 324, 123 S. Ct. at 1032, 154 L. Ed. 2d at 942.

> A discriminatory purpose may be inferred from the **totality of the circumstances and relevant facts**. Among the factors the court may consider to determine whether the proponent intended to discriminate are: the disparate impact of the prima facie discriminatory strikes on any one race; the racial make-up of the jury; the persuasiveness of the explanations for the strikes; the demeanor of the attorney exercising the challenge; and the consistent application of any stated policy for peremptory challenges.

*Edmonds*, 372 Md. at 330, 812 A.2d at 1043 (citing *Hernandez*, 500 U.S. at 363, 111 S.Ct. at 1868, 114 L.Ed.2d at 408) (emphasis added). Counsel's past behavior can also be a potential factor to determine the legitimacy of the explanation, as the *Stanley* court stated, "factors include 'the susceptibility of the particular case to racial discrimination, . . . the

race of the victims and primary witnesses, . . . the prosecutor's demeanor, . . . a past pattern of discriminatory practices by a prosecutor's office, . . . whether similarly situated white jurors were struck on identical or comparable grounds.'" *Stanley*, 313 Md. at 79, 542 A.2d at 1281 (internal quotations and citations omitted).

In the case *sub judice*, the record is devoid of facts that we can review that support the court's finding regarding counsel's alleged purposeful discrimination in other cases. *Batson*, 476 U.S. at 97–98, 106 S. Ct. at 1723–24, 90 L. Ed. 2d at 83–89. It appears that the trial judge simply did not believe defense counsel's race neutral explanations for the peremptory strikes and that the primary basis for that disbelief was attributable to a pattern involving defense counsel's trial tactics and practice. The judge's impression of this alleged practice, which he perceived in other trials and in the present case, was never documented on the record. Specifically the judge made various statements including: "[t]he Court's seen the pattern . . . [a]nd has the records", "[e]very juror you struck on our trial on Monday was white", and "[f]or the record the Court is making the finding that it appears by practice the defense attorney in this case is exercising peremptory challenges based on race." We have noted, in a different context, that "[t]he fact that the trial court's bases for its decision (the statement allegedly given by the unnamed public defender and the file consulted by the judge) are beyond our reach makes it untenable to sustain the trial court's ruling as a permissible exercise of discretion." *Grant v. State*, 414 Md. 483, 498, 995 A.2d 975, 983 (2010) (holding that the "trial court abused its discretion by relying exclusively on information outside of the record in denying Grant a postponement to seek counsel."). "The general rule undoubtedly is that a court will not travel outside the record

of the case before it in order to take notice of the proceedings in another case, even between the same parties and in the same court, unless the proceedings are put in evidence[.]"[2] *Fletcher v. Flournoy*, 198 Md. 53, 60, 81 A.2d 232, 235 (1951) (internal quotations and citations omitted).

Mere allegations of discriminatory practices will not suffice; evidence is needed. For example, in *Miller-El I*, the Supreme Court concluded that the prosecutor's exercise of peremptory strikes on the basis of the prosecutor's widely known general policy of excluding black jurors was unconstitutional. *Miller-El I*, 537 U.S. at 324, 123 S. Ct. at 1032, 154 L. Ed. 2d at 942. Actual evidence included testimony from two former prosecutors in the same office and a copy of a former office manual that outlined the reasons for excluding potential jurors of color. *Miller-El I*, 537 U.S. at 334–35, 123 S. Ct. at 1038–39, 154 L. Ed. 2d at 948–49. *See also Miller-El v. Dretke (Miller-El II)*, 545 U.S. 231, 266, 125 S. Ct. 2317, 2340, 162 L. Ed. 2d 196, 230 (2005) (holding that the striking of black jurors was pretextual and Miller-El was entitled to prevail on his *Batson* claim

---

[2] We recognize that how far the trial judge can go in relying on a pattern of discrimination that he or she has observed in other cases may be problematic. It is not our intention to encourage trial judges to assume the role as advocate for either side in a trial. *See Marshall v. State*, 291 Md. 205, 213, 434 A.2d 555, 560 (1981) ("[T]he judge is most likely to preserve his role as an impartial arbiter . . . [by avoiding] the appearance of acting as an advocate"). If it is necessary for a trial judge to become a witness in a case, the judge must recuse him or herself and the trial would have to be continued before another judge. "The judge presiding at the trial may not testify in that trial as a witness." Md. Rule 5-605. "A judge shall perform the duties of judicial office, including administrative duties, without bias or prejudice." Md. Rule 16-813, Code of Jud. Conduct, Rule 2.3 (a). "A judge shall not investigate facts in a matter independently, and shall consider only the evidence in the record and any facts that may properly be judicially noticed." Md. Rule 16-813, Code of Jud. Conduct, Rule 2.9 (c).

based on evidence of discrimination which was initially presented at a *Swain* hearing, *i.e.*, a pretrial hearing to determine whether there was evidence indicating a systemic exclusion based on race pre-*Batson*, and later used as part of the *Batson* hearing).

The Court of Special Appeals in the present case, in a dissenting opinion, noted that the Supreme Court has endorsed a context and credibility dichotomy for appellate review of the lower court's findings. *See Snyder v. Louisiana*, 552 U.S. 472, 128 S. Ct. 1203, 170 L. Ed. 2d 175 (2008). The factors[3] which the trial courts turn to in determining whether explanations are valid or pretextual may be divided into two analytical categories: context and credibility. For appellate review, context is easier to review for clear error, and can easily be discerned from the trial record; whereas, persuasiveness and demeanor are not so visible in the appellate record. A credibility assessment based on counsel's past conduct and history is proper; however, there should be evidence in the record which the appellate court can review. A trial judge's reliance on counsel's past conduct or history, is unlike an in-the-moment credibility determination or a demeanor assessment. A record of counsel's peremptory strikes from other trials ordinarily can be obtained and placed into evidence. An appellate court can easily review this. On the other hand, a trial judge's demeanor assessment is not readily apparent from the record.

In *Snyder*, defense counsel raised a *Batson* challenge after the prosecutor removed black jurors. *Snyder*, 552 U.S. at 478–79, 128 S. Ct. at 1208–09, 170 L. Ed. 2d 175, 182. The prosecutor struck a young black male juror for two articulated reasons: (1) that he

---

[3] *See supra* pp. 21–22.

looked nervous, and (2) that he was a student-teacher with a demanding schedule and thus he was more likely to find the defendant guilty of a lesser verdict in order to avoid the penalty phase. *Id.* The trial court refused to reseat the black juror without explanation. *Snyder*, 552 U.S. at 479, 128 S. Ct. at 1209, 170 L. Ed. 2d at 182 ("Rather than making a specific finding on the record concerning Mr. Brooks' demeanor, the trial judge simply allowed the challenge without explanation."). First, the reviewing court concluded that the first explanation offered, nervousness of the juror, could not be shown from a cold transcript, as part of appellate review, and thus the Court deferred to the trial court. *Id.* (noting that for these determinations as to demeanor "in the absence of exceptional circumstances, we would defer to [the trial court]," [*Hernandez*,] 500 U.S. at 366, 111 S.Ct. [at 1870, 114 L. Ed. 2d at 410].").

In contrast, the Court scrutinized the prosecutor's contextual explanation and compared the struck black juror with other jurors and found another white juror to have obligations even more pressing. *Snyder*, 552 U.S. at 479–86, 128 S. Ct. at 1209–12, 170 L. Ed. 2d at 182–86 ("The second reason proffered for the strike of Mr. Brooks—his student-teaching obligation—fails even under the highly deferential standard of review that is applicable here."). Thus, the Court reversed on the basis of this context analysis and held the prosecutor's explanation was "implausible," giving rise to the inference of discriminatory intent. *Id.* (holding, upon review of the trial judge's finding, that the trial judge committed clear error).

In the case *sub judice*, defense counsel was able to articulate the difference between the older white juror and the older black jurors. Moreover, as discussed, each explanation

offered by counsel has been well established to be valid and race neutral. Thus, the trial judge appears to have relied on the attorney's pattern and practice from previous trials in finding a pretext for racial discrimination. To do so, the judge should point to evidence, on the record, for the appellate court to review. Here, the trial judge granted the State's *Batson* challenge when the alleged discriminatory pattern and practice the judge referred to was not established in the record. In addition, declaring a discriminatory intent to be inherent in an attorney's race neutral explanation nullifies the distinction between lawful discrimination, which is permitted by counsel's race neutral explanations, and unconstitutional discrimination. Deferring to the trial judge's finding of pretext, without more, is to effectively hold that such *Batson* findings are unreviewable by an appellate court. Without evidence to support the judge's finding, upholding the *Batson* challenge is invalid.

### Remedy: Reversal

A majority of the Court holds that reversal is the appropriate remedy in this case. Md. Rule 8-131(c) ("the appellate court will review the case on both the law and the evidence. It will not set aside the judgment of the trial court on the evidence unless clearly erroneous"). When there is no competent material evidence to support the trial court's factual findings, those findings are deemed to be clearly erroneous. *Webb*, 433 Md. at 678, 72 A.3d at 594.

The trial judge could not point to material evidence in the record of this case to support his rejection of counsel's race neutral explanations. Here, the judge relied, not entirely on what happened in the court-room in this case, but rather on an alleged pattern

- 27 -

developed in other cases. Counsel explained how his peremptory strikes advanced the defense's trial strategy here and that the strikes have been previously accepted by courts as valid race neutral explanations for striking jurors. The relevant portions of a record of any previous trials to establish this practice, however, have not been made a part of this record. Accordingly, this Court does not have the ability to review and consider that information on the basis of this appeal. We agree with Spencer's contention that "a trial judge's decision to resolve a *Batson* issue by relying upon an undocumented and unreviewable intuition prevents appellate courts from performing their duty to review for clear error." Moreover, even if we were to assume that the trial judge's finding of purposeful discrimination was based on something more than the alleged pattern of discrimination, that finding was clearly erroneous as defense counsel offered the court recognized and valid justifications for exercising peremptory strikes.

In the present case, the appropriate remedy is a new trial because of the obvious limitations to reconstructing the circumstances surrounding the peremptory challenges. We have said:

> [U]nless it is impossible to reconstruct the circumstances surrounding the peremptory challenges, due perhaps to the passage of time or the unavailability of the trial judge, the proper remedy where the trial court does not satisfy *Batson's* requirements is a new *Batson* hearing in which the trial court must satisfy the three-step process mandated by that case and its progeny.

*Edmonds*, 372 Md. at 339–40, 812 A.2d at 1048–49. *See also* Md. Rule 8-604. In the case at bar, there is a significant "lapse in time" after the jury selection. Almost three years have passed since trial began on January 8, 2014. The following events have occurred, a trial

- 28 -

on the merits and two appellate reviews. *See Mejia v. State*, 328 Md. 522, 540, 616 A.2d 356, 365 (1992) (holding that less than two years since jury selection began would not be a "sufficient lapse of time to justify a grant of a new trial"). *See also Edmonds*, 372 Md. at 339–40, 812 A.2d at 1048–49 (ordering a remand because under two years had lapsed after the original trial concluded); *Stanley*, 313 Md. at 76, 542 A.2d at 1279 (ordering a remand about two years after trial). In *Ray-Simmons*, we reversed and ordered a new trial noting that over three years had lapsed since the defendant's trial. *Ray-Simmons*, 446 Md. at 447, 132 A.3d at 286.

In *Ray-Simmons*, at step two of the *Batson* analysis, the State provided explanations for its peremptory challenges which were neither race nor gender neutral. The prosecutor intended to replace an African American male juror with another African American male juror. This Court held that the trial judge clearly erred when the defendant was not given the *Batson* relief he was entitled to receive. *Ray-Simmons*, 446 Md. at 434, 132 A.3d at 278. We explained that there was no "legitimate reason" for remanding for a new *Batson* hearing as the prosecutor had provided her explanations for the strikes, which were clearly improper and violated *Batson* "on its face". *Ray-Simmons*, 446 Md. at 446–47, 132 A.3d at 285–86 (holding that the judge was clearly erroneous in his ruling). Similarly, here, based on the record, there was no competent evidence to support the trial judge's conclusion that counsel's peremptory strikes were a pretext for racial discrimination.

In some cases remand may be more appropriate. *See Edmonds*, 372 Md. at 339–40, 812 A.2d at 1048–49 (holding that the trial judge acted improperly by not making a clear finding of pretext under step three); *Mejia*, 328 Md. at 539–41, 616 A.2d at 364–65

(holding that it was improper for the trial judge to make no specific findings or offer an explanation for his ruling denying the *Batson* objection).  Unlike in *Edmonds* or *Mejia*, the trial judge in the case at bar made a clear finding of racial pretext; however, that finding was unsupported by the record.

In *Tyler v. State*, 330 Md. at 270–71, 623 A.2d at 653, "the trial judge flatly rejected defense counsel's objections to the prosecutor's peremptory challenges based on gender discrimination without requiring the prosecutor to explain his conduct"; therefore, reversal was appropriate.  The *Tyler* Court explained:

> [I]n the case at hand the prosecutor's remarks in explaining his use of peremptory challenges with respect to race made perfectly clear that his use of peremptory challenges to exclude women from the jury were gender motivated and, therefore, contrary to Maryland constitutional law.  From his own mouth, it is patent that his attempts to exclude women were simply that he believed that he had a better chance to obtain guilty verdicts from a jury composed of men (preferably older men) than one composed of women (particularly young women).  In the face of what the prosecutor said at trial, he is not entitled to come forward at this time in an attempt to present a neutral explanation for challenging women jurors.

*Tyler*, 330 Md. at 271, 623 A.2d at 653 (1993).

Similarly, in the present case, the trial judge clearly stated that his reason for disbelieving defense counsel was due to a pattern of discrimination he had observed.  However, there is no documentation in this case to support a pattern of discrimination, even though the judge alluded to "records".  Remanding would allow the prosecutor a second opportunity to create a better record in support of a finding of racial pretext.  Therefore, it would be inappropriate and not in the interest of justice for this Court to allow further

- 30 -

development of the record to support the judge's beliefs. *Id.* (holding no further development of the record was appropriate).

The prosecution has failed to satisfy its burden of proof. A court may find a pretext for racial discrimination on the basis of several factors, including, but not limited to an attorney's demeanor and a past pattern of discrimination. *See Edmonds*, 372 Md. at 330, 812 A.2d at 1043; *Stanley*, 313 Md. at 79, 542 A.2d at 1281. On the basis of the record before us the prosecution did not prove racial pretext based on a pattern of discrimination. Thus, the trial judge's conclusion based upon disputed facts that were not in the record of this case and our inability to review the trial judge's undocumented beliefs warrants a reversal.

### Attempted Second-Degree Murder: Specific Intent to Kill

We now address the second issue before this Court which is whether the evidence was sufficient to support a finding of specific intent beyond a reasonable doubt to sustain the conviction of attempted second-degree murder. A majority of the Court holds that the evidence was insufficient to support the conviction for attempted second-degree murder. We have previously recognized that:

> "Murder is the killing of one human being by another with the requisite malevolent state of mind and without justification, excuse, or mitigation." *Ross v. State*, 308 Md. 337, 340, 519 A.2d 735, 736 (1987). The malevolent states of mind that qualify are: (1) the intent to kill, (2) the intent to do grievous bodily harm, (3) the intent to do an act under circumstances manifesting extreme indifference to the value of human life (depraved heart), or (4) the intent to commit a dangerous felony. *Id.* The General Assembly has determined that certain murders qualify as murder in the first degree, such as murders committed in the perpetration of enumerated felonies or any kind of willful, deliberate and premeditated killing. *See* Maryland Code, Article 27 §§ 407–410 (1957, 1996 Repl.Vol.) (setting forth the various

- 31 -

circumstances in which a murder will be classified as murder in the first degree). Second-degree murder includes all other types of murder. *See* Code, Art. 27 § 411 ("All other kinds of murder shall be deemed murder in the second degree.").

*Harrison*, 382 Md. at 488, 855 A.2d at 1226.

Moreover, "[t]he crime of attempt consists of a specific intent to commit a particular offense coupled with some overt act in furtherance of the intent that goes beyond mere preparation." *State v. Earp*, 319 Md. 156, 162, 571 A.2d 1227, 1230 (1990).

A specific intent crime "requires not simply the general intent to do the immediate act with no particular, clear or undifferentiated end in mind, but the additional deliberate and conscious purpose or design of accomplishing a very specific and more remote result." *Shell v. State*, 307 Md. 46, 63, 512 A.2d 358, 366 (1986) (citations omitted). Mere knowledge that a result is substantially certain to follow from one's actions is not the same as the specific intent or desire to achieve that result. *See McBurney*, 280 Md. at 29, 371 A.2d at 133 (explaining that "a general *mens rea* or intent 'includes those consequences which . . . are known to be substantially certain to result (regardless of desire). A specific intent . . . is some intent other than to do the *actus reus* thereof which is specifically required for guilt.'") (citations omitted).

*Thornton v. State*, 397 Md. 704, 738, 919 A.2d 678, 698 (2007).

Importantly, this Court has held "where an attempted [second-degree] murder is charged, the State must show a specific intent to kill—an intent to commit grievous bodily harm will not suffice. In addition, of course, the State must prove an attempt, and, where the evidence fairly generates the issue, the absence of justification, excuse, or mitigation." *Earp*, 319 Md. at 164, 571 A.2d at 1231. The intent which is required in the crime of "attempted murder is the specific intent to murder, i.e., the specific intent to kill under circumstances that would not legally justify or excuse the killing or mitigate it to manslaughter." *Earp*, 319 Md. at 167, 571 A.2d at 1233. This Court discussed that one

may be found guilty of murder even if there was no actual intent to kill, however, to be guilty of attempted murder there must be a specific intent to kill.[4] *Earp*, 319 Md. at 165–67, 571 A.2d at 1232–33 (holding that the conviction of attempted second-degree murder must be reversed where Earp inflicted serious bodily harm, but rather than drawing an inference that Earp had the required intent to kill, the trial judge erroneously found that Earp only had an intent to inflict serious bodily harm alone, which is insufficient).

"Since intent is subjective and, without the cooperation of the accused, cannot be directly and objectively proven, its presence must be shown by established facts which permit a proper inference of its existence." *Davis v. State*, 204 Md. 44, 51, 102 A.2d 816, 819 (1954). The required *mens rea* of intent to kill may be proved by circumstantial evidence. *Earp*, 319 Md. at 167, 571 A.2d at 1232. "[T]he trier of fact may infer the existence of the required intent from surrounding circumstances such as 'the accused's acts, conduct and words.'" *Smallwood v. State*, 343 Md. 97, 104, 680 A.2d 512, 515 (1996) (quoting *State v. Raines*, 326 Md. 582, 591, 606 A.2d 265, 269 (1992) (finding that Raines' actions in directing a gun at truck window, knowing the driver was on the other side, permits the inference that he intended to shoot with the intent to kill as it is reasonable to assume that Raines intended the victim's death as a natural and probable consequence of his actions)). Additionally, "'under the proper circumstances, an intent to kill may be inferred from the use of a deadly weapon directed at a vital part of the human body.'"

---

[4] For example, each is guilty of murder if A, B, and C have each killed someone and A acted with intent to kill, B acted with an intent to do serious bodily injury, and C acted with a reckless disregard of human life. However, only A would be guilty of attempted murder if the victim did not die. *See Earp*, 319 Md. at 165, 571 A.2d at 1232.

*Smallwood*, 343 Md. at 104, 680 A.2d at 515 (quoting *Raines*, 326 Md. at 591, 606 A.2d at 269). *See also Glenn v. State*, 68 Md. App. 379, 409, 511 A.2d 1110, 1126 (1986) (noting that intent to kill may be inferred as the natural and foreseeable consequences of defendant's stabbing victim four times in the abdomen).

In *Smallwood*, 343 Md. at 100, 680 A.2d at 513, this Court found that, under the facts of the case, the circumstantial evidence was insufficient to infer that Defendant had the required intent to kill for a conviction of attempted second-degree murder. The Defendant knew he had HIV when he raped three women at gun point. *Smallwood*, 343 Md. at 102, 680 A.2d at 514. The State argued, and the intermediate appellate court upheld the convictions, that his HIV positive status could be considered a deadly weapon and having unprotected sex with the women, knowing he was infected, would be equivalent to firing a loaded gun at the person. *Id.* Because Smallwood did not argue his acts were "performed under mitigating circumstances or that he was legally justified in attacking the women" he would only be found guilty of attempted murder "if there was sufficient evidence from which the trier of fact could reasonably have concluded that Smallwood possessed a specific intent to kill at the time he assaulted each of the three women." *Smallwood*, 343 Md. at 104, 680 A.2d at 515. Under the present facts, the same applies as Spencer is not arguing mitigating circumstances or that he was legally justified in colliding with Kinn.

In *Smallwood*, there was no evidence from which to infer an intent to kill as his actions were "wholly explained" by his intent to commit rape at gun point and an armed robbery. *Smallwood*, 343 Md. at 106, 680 A.2d at 516. Similarly, Spencer's actions can

- 34 -

be "wholly explained" by his trying to flee the police. Moreover, unlike shooting a gun as was the case in *Raines*, or stabbing a person in the abdomen as was the case in *Glenn*, the death of a cyclist is not a probable consequence of Spencer's recklessly driving away from the police. *See Raines*, 326 Md. at 591, 606 A.2d at 269; *Glenn*, 68 Md. App. at 409, 511 A.2d at 1126. Although a car is not ordinarily considered a deadly weapon, it could be used as one. There is no evidence that Spencer's goal was to harm Kinn. His goal was to avoid apprehension by the police. Kinn's left leg was struck by the Kia and his other injuries were sustained after he was thrown into the air from the impact and landed on the vehicle. Engaging in extremely reckless activity is not sufficient to sustain attempted murder. The defendant must actually know that the probable result of the action is the death of the victim, as was the case in *Raines*. Here, Spencer was driving extremely recklessly to avoid capture—not to kill.

We hold that the evidence was insufficient to establish beyond a reasonable doubt that Spencer formed the specific intent to kill Kinn. Pertinent facts in our analysis include: there is evidence in the record, based on Robinson's testimony, that the situation was chaotic during the chase and before the accident as passengers were intoxicated, screaming for the driver to stop and pull over, and panicking. Moreover, passenger Robinson only saw Kinn two seconds before the collision at which point he believes he yelled for Spencer to stop, but realized it was a very short time to react: "It was a last minute thing. By the time I seen him, it was boom, he was hit. I seen him, then I didn't [see] him, and that's the honest truth." Robinson testified that Spencer never indicated he wanted to injure, hurt, or collide with anyone.

- 35 -

Furthermore, the officers testified they saw Kinn from two to three telephone poles away, however, this does not lead to a reasonable inference that Spencer also saw him. Not only are officers trained to be aware of their surroundings, but Corporal Garrison also saw Kinn from further away as he indicated that his Tahoe sat higher. Moreover, based on Corporal Garrison's testimony Spencer had two options to avoid hitting Kinn: drive into the ditch or attempt to go around Deputy Tolley's car, which was half of a car length in front of his car, by getting into the opposing traffic lane—option one would certainly end the chase and option two would risk ending the chase. Although Deputy Tolley indicated that Spencer could have avoided hitting Kinn by coming back onto the road or landing in the ditch, he even acknowledged going into the ditch would cause the vehicle to stop, ending the chase and leading to capture. Spencer was driving recklessly during a police chase so as to avoid capture; thus, it can be inferred he was motivated to flee. Even assuming, as the State argues, that Spencer wanted to hit Kinn in order to help him escape, the intent to cause serious bodily injury in order to further his goal of escape is insufficient—Spencer was required to have the specific intent to kill Kinn. *See Earp*, 319 Md. at 166–67, 571 A.2d at 1232–33 (holding that the conviction of attempted second-degree murder must be reversed where Earp inflicted serious bodily harm, but rather than drawing an inference that Earp had the required intent to kill, the trial judge erroneously found that Earp only had an intent to inflict serious bodily harm alone, which is insufficient).

In the case at bar, the Court of Special Appeals stated that a reasonable jury could have found that Spencer lacked any intent to murder Kinn with the car. The correct

standard, however, is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt—and thus, the Court of Special Appeals found the jury could have found Spencer had the required specific intent to kill. We disagree. There was no evidence of a specific intent, based on Spencer's acts or words that he actually saw and intended to hit Kinn. *Earp*, 319 Md. at 165, 571 A.2d at 1232. Based on Spencer's conduct, the inference that he had the intent to kill is not proper. As we indicated in *Smallwood*, "[w]ithout evidence showing that such a result is sufficiently probable to support this inference, we conclude that [Defendant's] convictions for attempted murder [in the second-degree] must be reversed." *Smallwood*, 343 Md. at 109, 680 A.2d at 518.

## CONCLUSION

For the reasons stated above, we reverse without a retrial the judgment of the Court of Special Appeals as to count one, attempted second-degree murder. As to the remaining counts in the charging document, in light of our determination that the trial judge failed to satisfy the *Batson* requirement, we reverse the judgment of the Court of Special Appeals and remand the case for purposes of a new trial.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS IS REVERSED; CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR DORCESHTER COUNTY AND REMAND THE CASE TO THAT COURT FOR A NEW TRIAL. RESPONDENT TO PAY THE COSTS.**

Circuit Court for Dorchester County
Criminal Case No. 09-K-13-015062
Argued: September 8, 2016

IN THE COURT OF APPEALS
OF MARYLAND

No. 94

September Term, 2015

_____

KEVON SPENCER

v.

STATE OF MARYLAND

_____

Barbera, C.J.,
Greene,
Adkins,
McDonald,
Watts,
Hotten,
Getty,

JJ.

_____

Opinion by Barbera, C.J., dissenting in part.

_____

Filed:     November 29, 2016

I dissent, in part, from the judgment of the Court. I am in full agreement with the Court's holding that Petitioner Spencer is entitled to a reversal without a retrial of the conviction of attempted second degree murder because the evidence presented to the jury was legally insufficient to establish that he possessed the specific intent to kill that is required for conviction of that crime. I part company, however, with the Court's holding that the trial judge was clearly erroneous in finding that Spencer's trial counsel had relied on the race of three jurors in exercising peremptory challenges to strike them from the jury.

I would affirm the reasoning and holding of the majority of the three-judge panel of the Court of Special Appeals, who in an unreported decision concluded that the trial judge was not clearly erroneous in finding that Petitioner Spencer's trial counsel had violated the dictates of *Batson v. Kentucky*, 476 U.S. 79 (1986). Indeed, I have no quarrel with any part of the analysis of this issue by the majority of the three judges who decided this case for the Court of Special Appeals.

Finally, I note the attention that the federal courts and our sister state courts are giving, in light of *Rivera v. Illinois*, 556 U.S. 148 (2009), to the appropriate remedy for trial court errors like the one the majority of my colleagues imagine occurred in the present case.

I.

*The trial court was not clearly erroneous*
*in finding that defense counsel had violated* Batson.

"*Batson* and its progeny instruct that the exercise of peremptory challenges on the basis of race, gender, or ethnicity violates the Equal Protection Clause of the Fourteenth

Amendment." *Ray-Simmons v. State*, 446 Md. 429, 435 (2016). The Supreme Court set forth a three-step process to assist the trial judge in deciding a claim that a party to the case exercised one or more peremptory challenges to eliminate prospective jurors based on race, gender, or ethnicity. I need not repeat the now-familiar three-step process, as it is fully described in the majority opinion. *See* Maj. Slip Op. at 14-16. The dispute centers on the third step of the three-step process. It is at that step that the party challenging opposing counsel's exercise of peremptory strikes must carry the burden of proving to the trial judge's satisfaction that the facially neutral explanations given by the striking party are merely pretextual. *Purkett v. Elem*, 514 U.S. 765, 767-68 (1995) (per curiam). At that step, "the trial court must evaluate not only whether the [striking party's] demeanor belies a discriminatory intent, but also whether the juror's demeanor can credibly be said to have exhibited the basis for the strike attributed to the juror by the [striking party]." *Ray-Simmons*, 446 Md. at 437 (alterations in original) (citation omitted). We made clear long ago that the factors a trial judge may use to evaluate the legitimacy of the striking party's explanations include "a past pattern of discriminatory practices" by that attorney. *See Stanley v. State*, 313 Md. 50, 78-79 (1988) (citation omitted).

In the unreported opinion of the three-judge panel of the Court of Special Appeals, the Honorable Stuart R. Berger, writing on the *Batson* issue for himself and the Honorable Raymond G. Thieme, Jr. (Retired, Specially Assigned), summarized what occurred at step three of the process. I could not improve on either the summary of the trial record or the panel majority's legal analysis, so I shall quote extensively from the opinion, beginning with the summary of the relevant facts:

In this case, the defense exercised six peremptory strikes early in the selection process, and the State objected, noting that four of the strikes had been applied to white males, some of whom had given no affirmative answers to any voir dire questions. The court made an express finding that there was a "pattern of striking white mostly male jurors, even jurors who have not answered a question." The court then moved to the second *Batson* step, asking defense counsel to offer his rationale for the use of his peremptory strikes. Defense counsel did so, claiming that he routinely struck anyone who was a farmer, anyone who was a "mechanic," anyone who was self-employed, and anyone who was "older." The court expressed some skepticism of the genuineness of counsel's explanations. Indeed, the State noted that the defense had not objected to seating African American jurors who were older than the white juror the defense struck for being too old. The court further observed that defense counsel had not requested any additional voir dire of the self-employed juror, which would have addressed counsel's expressed concern that "self-employed" did not give him sufficient information. Moreover, at least one (African American, older) juror who was seated by the defense had similarly given no information about his prior employment, listing his occupation as simply "retired."

The court found that defense counsel's "race-neutral" explanations for striking three of the four challenged jurors were not sufficiently credible to rebut the *prima facie* case of improper jury strikes presented by the State. The court also noted that while all of the defense peremptories had been exercised against white veniremen, it did find that the defense had rebutted the claim of race-based strikes in one instance, explaining:

> For the record the Court is finding that it appears by practice the defense attorney in this case is exercising peremptory challenges based on race. The Court's articulated that previously hereto there are several challenges that have been made by the defense that the defense was able to give another reason that the Court found it reasonable to exercise a challenge, even though the challenges have uniformly been exercised against white individuals.

The court then seated three of the challenged jurors.

*Spencer v. State*, No. 493, slip op. at 4-6 (Md. Ct. Spec. App. Oct. 2, 2015) (footnote omitted).

The majority of the three-judge panel correctly recognized that the trial judge's ultimate ruling—that Spencer's trial counsel had struck three jurors on account of their

race—was essentially a fact-based decision. *See id.* at 4. The majority also correctly recognized that the trial court's determination necessarily took into account what counsel said about the challenged strikes and appropriately considered counsel's explanation in light of counsel's other actions and inactions during voir dire and jury selection. *See id.* at 4-6.

The majority of the three-judge panel further understood, correctly, that the trial judge also could consider what he knew about trial counsel's practice in other cases. *See id.* at 8. The Supreme Court has made clear the legitimacy of such evidence. The Court has noted that, "although some false reasons are shown up within the four corners of a given case, sometimes a court may not be sure unless it looks beyond the case at hand. Hence *Batson's* explanation that [the objecting party] may rely on 'all relevant circumstances' to raise an inference of purposeful discrimination." *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (citation omitted).

On the subject of what the trial judge knew about defense counsel's past practices, the majority of the panel had this to say:

> In this case, we must consider the context of the trial judge's comment about defense counsel's past practices of the use of race for his peremptory strikes. The court's first observation about defense counsel's propensity for seemingly race-based peremptory strikes was not made in the context of defense counsel's explanations. When the State first presented its *Batson* challenge, it pointed out the pattern of strikes in this case, and the court responded:
>
>> [Counsel], you have been playing with this for a long time in your other trials. The Court has noticed a pattern of striking white mostly male jurors, even jurors who have not answered

4

a question. I'm going to require you to explain your rationale [f]or striking.[1]

Spencer does not, on appeal, contend that the court erred in finding a *prima facie* case of race-based strikes in this case; as the court noted, in this case, defense counsel only struck white jurors, including those who had not answered any voir dire questions. Critically, the court's reference to "other trials" was made before Spencer's attorney was even asked to present the race-neutral reasons for his strikes.

The next reference to prior trials was made after counsel had proffered, and debated at some length, his various explanations, and the court had moved on to the third *Batson* step, i.e., determining whether the reasons presented adequately rebutted the apparent case of improper strikes. After discussing the various explanations given by counsel, the court asked if defense counsel "tend[ed] to strike white people when a Defendant is a black person[.]" Defense counsel denied this, and the court then pointed out that in this case, "every juror you struck has been white[.] Every juror you struck on our trial on Monday was white . . . . The Court's seen the pattern."

After some further discussion, the court then stated:

> It's surprising to the Court that if your decision is not color based, as you say, that you have been unable really to articulate any other reason that this Court finds acceptable. You first laid it on age.
>
> . . . .
>
> But the Court doesn't agree with that being the pattern *in this particular case*.

(emphasis added).

*Spencer*, slip op. at 6-8 (alterations in original). The majority of the panel took all of this into account in deciding, in my view, correctly, that the record:

> does not support Spencer's appellate claim that the court's ruling on the *Batson* claim "was derived largely on the judge's experience in previous cases[.]" Indeed, the vast majority of the discussion on the *Batson* challenge

---

[1] The trial judge in this case has been a judge of the Circuit Court for Dorchester County since June 2004. That circuit court was until March 2014 a one-judge court, and, even now, a second circuit court judge generally hears cases for only two weeks each month. Defense counsel in this case appears to be one of a very small cohort of those who serve as public defenders on the Lower Eastern Shore.

related to the specifics of that particular venire and the particular strikes made in this case. In short, the appellant points us to two references to prior trials out of fifteen pages of transcript. We, therefore, reject the appellant's claim that the trial judge erred in improperly considering prior trial experiences with defense counsel in determining whether to grant the State's *Batson* challenge. In our view, it distorts the record to select these two references out of the record and claim that the *only* reason the court refused to give defense counsel's race-neutral explanations more weight was because of prior trials involving defense counsel.

*Id.* at 8.

I am in full accord, moreover, with my colleagues on the Court of Special Appeals who formed the majority on this issue that it is neither necessary nor reasonable to direct a remand in order to develop a more complete record concerning what, when, and how defense counsel exercised peremptory challenges in other cases. On this subject, Judge Berger wrote for himself and Judge Thieme:

We hold that it is unnecessary that any and all history of inappropriate use of peremptory challenges be objectively verified for clear error. . . . It is simply not reasonable for trial courts to expect the parties to present evidence on whether a particular attorney has a practice of striking jurors of a particular race or gender.

Moreover, even if one were able to detail on the record the attorney's practice of striking certain jurors on the basis of illegitimate reasons, such a practice could lead to a trial-within-a-trial of an attorney's use of peremptories in previous cases. In our view, this has the potential to cause real problems for the trial courts. Would a court, when presented with a *Batson* issue involving an attorney's prior peremptories, need to recess in order for the attorneys to gather their notes and allow time for the court to gather the case files from previous trials? All while the prospective jurors are waiting? Further, we have additional reservations about the remedy suggested upon remand.

Critically, credibility determinations and assessments of demeanor lie particularly within the province of the trial judge. . . . "[A] reviewing court, analyzing only the transcript of the voir dire, is 'not as well positioned as the trial court to make credibility determinations.'" *Berry v. State*, 155 Md. App. 144, 163 (2004) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 339 (2003)). As a result, the determination of whether a party's explanation is pretextual

6

is a finding that we, upon review, accord great deference. *See also Edmonds v. State*, 372 Md. 314, 331 (2002) ("The trial judge's findings in evaluating a *Batson* challenge are essentially factual and accorded great deference on appeal.").

Moreover, an appellate challenge to the trial court's decision to accept or reject the proffered reasons for a peremptory strike is rarely successful, because "the credibility of the proponent offering the reasons is, as it is generally, for the trial court -- not an appellate court -- to determine." *See Jeffries v. State*, 113 Md. App. 322, 376 (1997) ("[A]ppellate courts must be highly deferential and will not presume to overturn a trial judge's findings on [a *Batson*] issue unless they are clearly erroneous."). We, therefore, defer to the fact-based credibility determinations of the seasoned trial judge who sustained the State's challenge under *Batson*. We, therefore, hold that the circuit court was not clearly erroneous in finding that defense counsel's reasons for striking the reseated jurors was pretextual. Accordingly, we affirm the judgments of conviction.

*Id.* at 9-10 (footnote omitted).

I would adopt, in full, the reasoning of the Court of Special Appeals and would hold that the trial judge was not clearly erroneous in finding a *Batson* violation and seating the jurors whom Petitioner had sought to exclude.

II.

*A thought about remedy, generally.*

I mentioned at the outset of this opinion that some of the federal courts and our sister state courts have been reacting to *Rivera*, 556 U.S. at 148. I take this opportunity to spend a few moments on *Rivera*, as it speaks directly to the potential remedy for *Batson*-related errors like the one the majority of my colleagues imagine occurred in the present case.

The Supreme Court granted certiorari in *Rivera* "to resolve an apparent conflict among state high courts over whether the erroneous denial of a peremptory challenge requires automatic reversal of a defendant's conviction as a matter of federal law." 556

7

U.S. at 156.[2]  The trial judge in Rivera's case had raised *sua sponte* a *Batson*-related concern about defense counsel's use of a peremptory challenge to strike a female juror.  *Id.* at 153.  The judge questioned counsel about counsel's reasons for the strike, then ruled that the strike was based on the juror's gender.  *Id.* at 153-54.  As a remedy for counsel's

---

[2] In addition to the Illinois case before it, the *Rivera* Court cited several other state supreme court cases on both sides of the divide.  *See* 556 U.S. at 156 (citing *People v. Bell*, 702 N.W.2d 128, 138-41 (Mich. 2005); *Angus v. State*, 695 N.W.2d 109, 118 (Minn. 2005); *State v. Vreen*, 26 P.3d 236, 238-40 (Wash. 2001) (en banc)).

There remains a split among the state courts as to the proper remedy following the erroneous denial of a defendant's peremptory challenge.  *Compare, e.g.*, *State v. Mootz*, 808 N.W.2d 207, 225 (Iowa 2012) (holding that a presumption of prejudicial error follows an erroneous denial of a defendant's peremptory challenge, thereby mandating a reversal of the defendant's conviction); *Commonwealth v. Hampton*, 928 N.E.2d 917, 927 (Mass. 2010) ("We continue to adhere to the view that, for purposes of State law, the erroneous denial of a peremptory challenge requires automatic reversal, without a showing of prejudice."); *State v. Campbell*, 772 N.W.2d 858, 862 (Minn. Ct. App. 2009) (concluding that the State law "requirement of automatic reversal survives *Rivera*"); *People v. Hecker*, 942 N.E.2d 248, 271-72 (N.Y. 2010) (concluding that a mistaken denial of a peremptory challenge "mandates automatic reversal") *with, e.g.*, *People v. Novotny*, 320 P.3d 1194, 1202 (Colo. 2014) ("While we do not imply today that every violation of our statutes and rules prescribing the use of peremptory challenges must be disregarded as harmless, we are nevertheless unwilling to conclude that such violations . . . rise to the level of structural error."); *State v. Lewis*, 112 So.3d 796, 804 (La. 2013) ("[W]e find the harmless-error analysis . . . remains the appropriate standard for review of a district court ruling prohibiting a defendant from using a peremptory challenge."); *Robinson v. State*, 255 P.3d 425, 430 (Okla. Crim. App. 2011) (overruling state law precedent mandating automatic reversal following an erroneous denial of a defendant's peremptory challenge in favor of a harmless error analysis).

All federal circuit courts that have considered the issue post-*Rivera* have rejected a rule of automatic reversal.  *See, e.g.*, *U.S. v. Bowles*, 751 F.3d 35, 39 (1st Cir. 2014) ("Every one of our sister circuits to have considered the question has similarly held that, under *Rivera*, error in sustaining a *Batson* challenge is subject to harmless error analysis."); *U.S. v. Williams*, 731 F.3d 1222, 1236 (11th Cir. 2013) ("We thus apply harmless error review to any misapplication of *Batson* that results in the seating of a juror who is otherwise qualified for juror service."); *U.S. v. Lindsey*, 634 F.3d 541, 544 (9th Cir. 2011) ("[W]e reject [the] automatic reversal rule and review the denial of [defendant's] peremptory challenge under a more deferential standard of review.").

violation of *Batson*, the judge seated the juror. *Id*. at 154. The Illinois Supreme Court agreed with Rivera that the trial judge erred in finding that defense counsel purposefully discriminated against the juror. *People v. Rivera*, 879 N.E.2d 876, 884 (Ill. 2007). The state supreme court then examined the trial record and found no indication that Rivera had been "tried before a biased jury, or even *one* biased juror." *See id.* at 885-87 (emphasis in original). The state supreme court therefore held that the denial of Rivera's peremptory challenge did not constitute structural error requiring automatic reversal. *Id*. at 887.

The United States Supreme Court affirmed the decision of the Illinois Supreme Court, agreeing with that court that the trial judge's error did not qualify as "structural error"; rather, Rivera was "tried before a qualified jury composed of individuals not challengeable for cause." *Rivera*, 556 U.S. at 157. Justice Ginsburg, writing for the unanimous Court, restated the longstanding principle that there is no federal constitutional right to peremptory challenges, although States may provide for such challenges by statute. *Id.*; *see also U.S. v. Martinez-Salazar*, 528 U.S. 304, 311 (2000); *Ross v. Oklahoma*, 487 U.S. 81, 88 (1988) ("We have long recognized that peremptory challenges are not of constitutional dimension."). Consequently, "the mistaken denial of a state-provided peremptory challenge does not, without more, violate the Federal Constitution." *Rivera*, 556 U.S. at 158. Although one's fundamental right to a trial by an impartial jury must be secured, that right is secured by use of challenges for cause. *See id.* at 158-59.

The *Rivera* Court concluded that, because the challenged, but ultimately seated, juror was not subject to removal for cause, "Rivera's jury was impartial for Sixth Amendment purposes." *Id.* at 159. The Court, moreover, rejected Rivera's argument that

9

the erroneous denial of a criminal defendant's challenge violates the Due Process Clause of the Fourteenth Amendment or other federal law. *Id.* at 159-61. The Court distinguished the cases cited by Rivera that involve constitutional errors relating to, among other issues, the qualification of the judge or jury, including *Batson* itself. *Rivera*, 556 U.S. at 161. It is notable that, unlike Rivera's case, *Batson* involved the unlawful *exclusion* of jurors from the jury. *See Rivera*, 556 U.S. at 161 (citing *Batson*, 476 U.S. at 86-87).

Notwithstanding its rejection of Rivera's federal constitutional claims, the *Rivera* Court emphasized:

> States are free to decide, as a matter of state law, that a trial court's mistaken denial of a peremptory challenge is reversible error *per se*. Or they may conclude, as the Supreme Court of Illinois implicitly did here, that the improper seating of a competent and unbiased juror does not convert the jury into an ultra vires tribunal; therefore the error could rank as harmless under state law.

*Id*. at 162.

This Court considered a substantially similar set of facts in *Parker v. State*, 365 Md. 299, 311 (2001), and concluded that a defendant was entitled to a new trial following the trial judge's erroneous denial of defense peremptory challenges. As in the present case, the Court in *Parker* was not asked to consider whether, as a result of the trial judge's error, Parker was entitled *automatically* to a new trial, or instead whether a harmless error analysis determines entitlement to such relief. In light of *Rivera* and the federal and state high court decisions that have issued in its wake, this Court should settle the question as a matter of Maryland law. This case, however, is not the one in which to do that, as neither

10

party has even touched this issue, much less presented to this Court a properly preserved argument on the issue.

Circuit Court for Dorchester County
Case No. 09-K-13-015062

Argued: September 8, 2016

IN THE COURT OF APPEALS

OF MARYLAND

No. 94

September Term, 2015

_____

KEVON SPENCER

v.

STATE OF MARYLAND

_____

Barbera, C.J.
Greene
Adkins
McDonald
Watts
Hotten
Getty,

JJ.

_____

Concurring and Dissenting Opinion by Watts, J.

_____

Filed: November 29, 2016

Respectfully, I concur in part and dissent in part. In the Court of Special Appeals, this case gave rise to multiple opinions explaining the Court's holdings. In this Court, this case gives rise to five opinions, none of which has the full support of a majority of judges of the Court.

I agree with Judge Greene that, in this case, the circuit court erred in reseating the prospective jurors whom Spencer's counsel peremptorily struck, and as to whom the State raised a <u>Batson</u> challenge;[1] and, like Judge Greene, based on the <u>Batson</u> issue, I would reverse the judgment of the Court of Special Appeals with instructions to reverse the circuit court's judgment and remand this case to the circuit court with instructions to conduct a new trial. Rather than concluding that a remand is not appropriate where a trial judge made a clearly erroneous finding at step three of the <u>Batson</u> analysis, I would hold only that a remand to develop new evidence of purposeful discrimination is not permissible and is not in the interest of justice. I would, however, affirm the Court of Special Appeals as to the sufficiency of the evidence, and hold that the evidence was sufficient to support the conviction for attempted second-degree intent-to-kill murder.

## I. Proper Remedy for the Circuit Court's <u>Batson</u> Violation

I wholly agree with Judge Greene that the circuit court erred in resolving the <u>Batson</u> issue; there was no support in the record for a finding that Spencer's counsel had peremptorily struck prospective jurors based on race in earlier cases; and the appropriate remedy is a new trial. <u>See</u> Judge Greene's Slip Op. at 1, 10, 27-28.

---

[1]<u>See</u> <u>Batson v. Kentucky</u>, 476 U.S. 79 (1986).

In this case, justice would not be served by ordering a remand because a post-trial hearing for the purpose of developing new evidence concerning the trial judge's recollections of Spencer's counsel's past conduct would give the State a "second bite at the apple"—*i.e.*, a second chance to establish a case of purposeful discrimination, or a *prima facie* case with respect to Spencer's counsel's past conduct or practice—when the proper time to establish the same was before trial, not after.

Judge Greene asserts, and my other colleagues who write agree, that the dispute concerns step three of the <u>Batson</u> analysis[2]—*i.e.*, whether the circuit court was correct in determining that the State had proven purposeful racial discrimination, or whether State had established that Spencer's counsel's alleged racially neutral reasons for exercising its peremptory strikes were, in fact, pretextual. <u>See</u> Judge Greene's Slip Op. at 15-16. Yet, evidence regarding the circuit court's recollection of Spencer's counsel's past conduct or practice, which constituted evidence of purposeful discrimination, is evidence that would go to step one of the <u>Batson</u> analysis. Obviously, Spencer's counsel's past conduct or practice does not go to step two, which concerns Spencer's counsel's race-neutral reasons for the peremptory strikes, not Spencer's counsel's past pattern of exercising peremptory

---

[2]It is well-established that, where a party raises a <u>Batson</u> challenge, a trial court must follow a three-step process. First, the trial court determines whether the party that raised the <u>Batson</u> challenge has made a *prima facie* showing that the other party struck a prospective juror based on race. <u>See</u> <u>Ray-Simmons v. State</u>, 446 Md. 429, 436, 132 A.3d 275, 279 (2016). Second, if the trial court finds a *prima facie* case of purposeful discrimination, the trial court orders the challenged party to offer race-neutral reasons for the peremptory strikes. <u>See</u> <u>id.</u> at 436, 132 A.3d at 279. Third, the trial court determines whether the party that raised the <u>Batson</u> challenge has proven purposeful racial discrimination, *i.e.*, whether the reasons given by the non-moving party are pretextual are not. <u>See</u> <u>Ray-Simmons</u>, 446 Md. at 437, 132 A.3d at 280.

strikes. Nor does Spencer's counsel's past conduct or practice go to step three, which is comprised of a trial court's assessment of the evidence before it, not the development of additional evidence.

Contrary to my colleagues' beliefs, Spencer never conceded that the circuit court made a proper determination at step one of the Batson analysis, much less agreed before this Court that the circuit court's determination at step three was the sole issue in dispute. Quite the opposite, in his brief, Spencer urges this Court to "reject the trial [court]'s *Batson* finding as clearly erroneous where there was no record evidence to support that finding of intentional discrimination, and where [Spencer's] counsel vigorously disputed the trial [court]'s characterization." Spencer's contention clearly goes to step one, which involves a determination of a *prima facie* case of purposeful discrimination. As Judge Greene accurately recounts, the State on brief alleges that "[t]his case addresses the third step, which is reviewed only for clear error[]." Judge Greene's Slip Op. at 16 (brackets in original). Spencer contends no such thing.

None of my colleagues identifies any explicit concession by Spencer that evidence of Spencer's counsel's past conduct goes solely to the circuit court's determination at step three of the Batson analysis; instead, they rely on their interpretation of the record, despite Spencer's contention that "there was no record evidence to support [the circuit court's] finding of intentional discrimination[.]" It should be noted that, in the alternative, Spencer contended that, "even assuming [that] the trial [court] based [its] step three *Batson* finding on something other than [Spencer's] counsel's presumed past practice of discrimination, reversal is still warranted where the finding of pretext was clearly erroneous." This

- 3 -

contention obviously does not constitute a concession that the dispute in this case is limited to step three of the analysis. Put plainly, the record is devoid of any such concession by Spencer.

In an opinion in which she dissents in part, Chief Judge Mary Ellen Barbera quotes the following statement by the majority of the panel of the Court of Special Appeals as to the <u>Batson</u> issue: "The [circuit] court made an express finding that there was a 'pattern of striking white mostly male jurors, even jurors who have not answered a question.' **The [circuit] court then moved to the second *Batson* step,** asking defense counsel to offer his rationale for the use of his peremptory strikes." Slip Op. at 3 (emphasis added). A review of the record, however, reveals that the circuit court required Spencer's counsel to respond to the State's <u>Batson</u> challenge without making an explicit determination at step one and without determining that it was Spencer's counsel's in-court conduct that necessitated the response.

The prosecutor raised a <u>Batson</u> challenge, alleging that Spencer's counsel had struck at least four white prospective jurors who had not responded to any questions during *voir dire*. In full context, the circuit court stated: "[Spencer's counsel], you've been playing with this for a long time in your other trials. The Court has noticed a pattern of striking white mostly male jurors, even jurors who have not answered a question. I'm going to require you to explain your rationale or striking." In other words, the circuit court did not expressly find that the State had established a *prima facie* case of purposeful discrimination based on Spencer's counsel's in-court conduct of peremptorily striking white prospective jurors; but, rather, without announcing that step one of the <u>Batson</u> analysis had been

- 4 -

satisfied and without delineating between Spencer's counsel's in-court conduct or its recollection of trial counsel's prior pattern of peremptorily striking white prospective jurors, the circuit court proceeded to step two of the <u>Batson</u> analysis and required trial counsel to provide race neutral reasons for the peremptory challenges.

Regardless of whether the dispute involves evidence of purposeful discrimination at step one of the analysis or the circuit court's analysis at step three, the point which should be emphasized is that no Supreme Court or Maryland case law permits a remand to gather additional evidence post-trial of a <u>Batson</u> challenge at any stage of the analysis. <u>Miller-El v. Dretke</u>, 545 U.S. 231 (2005), does not support the proposition that a post-trial hearing to establish a violation at any step of the <u>Batson</u> analysis is appropriate. In <u>Miller-El</u>, <u>id.</u> at 235, 263-64, the Supreme Court held that a trial court erred in determining that a defendant failed to show purposeful racial discrimination, where there was a "body of evidence" that showed that, for decades leading up to the defendant's trial in 1986, the prosecutor's office "had followed a specific policy of systematically excluding blacks from juries[.]" Significantly, this evidence was presented at a "<u>Swain</u> hearing." A <u>Swain</u> hearing was a pretrial hearing whose purpose was to determine whether the defendant was entitled to relief under <u>Swain v. Alabama</u>, 380 U.S. 202 (1965), which, before <u>Batson</u>, was the case that governed relief for peremptory strikes that were based on purposeful racial discrimination. <u>See Miller-El</u>, 545 U.S. at 236. Earlier, during jury selection, prosecutors had exercised peremptory strikes on ten African-American prospective jurors. <u>See id.</u> The defendant claimed that the peremptory strikes were based on race, and requested a new jury on that ground. <u>See id.</u> The trial court conducted a <u>Swain</u> hearing and concluded that

the prosecutor's office did not have a policy of systematically excluding blacks from juries. Id. at 264, 236.

The jury convicted the defendant, who appealed. See id. at 236. While the appeal was pending, the Supreme Court issued Batson, in which the Court overruled Swain. See Miller-El, 545 U.S. at 236. A Texas appellate court remanded the defendant's case to the trial court for further consideration in light of Batson. See Miller-El, 545 U.S. at 236. On remand, the trial court accepted the race-neutral reasons that one of the prosecutors provided for the peremptory strikes. See id. The defendant appealed again, and a Texas appellate court affirmed the trial court's judgment. See id. at 236-37.

Years later, the defendant applied for a writ of habeas corpus, once again asserting that the peremptory strikes had been based on race. See id. at 237. A federal District Court denied the application, and the Supreme Court concluded that it erred in doing so. See id. Based on the record established during *voir dire* and adduced at the Swain hearing, the Supreme Court found several instances of evidence of purposeful racial discrimination; for example, the prosecutors phrased certain *voir dire* questions differently depending on whether the prospective juror was black. See Miller-El, 545 U.S. at 255.

In Batson, 476 U.S. at 100, because the trial court rejected the defendant's objection to the prosecutor's removal of all African-American prospective jurors without requiring the prosecutor to explain his action, the case was remanded for further proceedings. In other words, in Batson, the Supreme Court remanded the case for the sole purpose of allowing the prosecutor to explain his action in challenging African-American jurors, not for the purpose of holding a hearing to develop new or additional facts in support of a *prima*

*facie* case of purposeful discrimination.

With respect to a remand as the remedy for a <u>Batson</u> violation, as Judge Greene notes, <u>see</u> Judge Greene's Slip Op. at 28, in <u>Edmonds v. State</u>, 372 Md. 314, 339-40, 812 A.2d 1034, 1048-49 (2002), this Court stated:

> **[U]nless it is impossible to reconstruct the circumstances surrounding the peremptory challenges**, due perhaps to the passage of time or the unavailability of the trial judge, the proper remedy where the trial court does not satisfy *Batson*'s requirements is a new *Batson* hearing in which the trial court must satisfy the three-step process mandated by that case and its progeny.

(Emphasis added). In <u>Edmonds</u>, this Court ordered a remand pursuant to Maryland Rule 8-604, which states in pertinent part: "If the Court concludes that the substantial merits of a case will not be determined by affirming, reversing or modifying the judgment, or that **justice will be served by permitting further proceedings**, the Court may remand the case to a lower court." Md. R. 8-604(d)(1) (emphasis added). In <u>Edmonds</u>, 372 Md. at 341, 812 A.2d at 105, a remand was appropriate because the trial court failed to make a finding as to the credibility of a prosecutor's race-neutral reasons for peremptory strikes; accordingly, this Court remanded to a trial court with instructions to "make a determination whether the prosecutor's race-neutral reasons were pretextual[.]" Our holding in <u>Edmonds</u> demonstrates that there may be instances in which a remand for the trial court to satisfy step three is warranted. In contrast to <u>Edmonds</u>, here, there is no "gap" in the record with respect to the circuit court's findings as to trial counsel's reasons for striking the jurors; rather, the circuit court made a finding about Spencer's counsel's "practice" of striking jurors that was unsupported by any information in the record.

Similarly, in Stanley v. State, 313 Md. 50, 76, 542 A.2d 1267, 1279-80 (1988), a limited remand occurred for the State to explain the exercise of its peremptory challenges against African-American prospective jurors. On remand, a hearing was held at which the prosecutor, relying on notes from the jury selection process, explained his reasons for striking African-American jurors. See Stanley v. State, 85 Md. App. 92, 97, 582 A.2d 532, 534 (1990), cert. denied, 322 Md. 240, 587 A.2d 247 (1991). On remand, the trial court found the prosecutor's reasons for challenging the jurors to be race-neutral. See Stanley, 85 Md. App. at 94, 582 A.2d at 533. Subsequently, the Court of Special Appeals held that the prosecutor's use of peremptory challenges was motivated by race-neutral reasons, and affirmed the convictions. See id. at 106, 582 A.2d at 538-39. Like Batson and Edmonds, Stanley does not stand for the proposition that a remand is to be used to develop new facts or a new record to support the establishment of the purposeful discriminatory use of peremptory challenges. In sum, in Stanley, 313 Md. at 75-76, 542 A.2d at 1279, this Court concluded that the trial court properly found a *prima facie* case of purposeful discrimination, and ordered a remand to allow the State an opportunity to explain its use of peremptory challenges. On remand, the prosecutor relied on notes taken during the original jury selection process to support or explain the reasons for utilizing peremptory challenges. See Stanley, 85 Md. App. at 97, 582 A.2d at 534. Indeed, in Stanley, 313 Md. at 76 n.15, 542 A.2d at 1280 n.15, this Court stated:

> This is not to say though that we will always remand for an evidentiary hearing. **There may come a time when we would simply reverse and remand for a new trial.** For an example of a case that was reversed and a new trial ordered, *see People v. Scott*, [] 516 N.E.2d 1208, 1212 ([N.Y. ]1987) ("**A hearing is inappropriate in this case, however, because of the**

**absence of a record and the impossibility of securing one.**").

(Emphasis added).[3] Thus, in Stanley, on remand, the State was given an opportunity to respond to the *prima facie* showing, and was restricted to reconstructing the circumstances of the original jury selection process. A review of relevant case law reveals that a limited remand has never been used to allow the proponent of a Batson challenge a second opportunity to develop new evidence of purposeful discrimination. Put plainly, although a remand under certain circumstances may be appropriate to allow a trial court to satisfy the Batson analysis and in the interest of justice, no case law authorizes a remand for the purpose of developing new evidence of purposeful discrimination at any step of the Batson analysis. For this basic reason, the appropriate remedy here is a new trial.

On a related matter, in Rivera v. Illinois, 556 U.S. 148, 157 (2009), the Supreme Court held that, under the United States Constitution, Batson issues are subject to the doctrine of harmless error—*i.e.*, an appellate court may affirm a trial court's erroneous ruling on a Batson issue if the error was harmless beyond a reasonable doubt. In other words, under the United States Constitution, a Batson error is not a "structural error," which can never be harmless. As the Supreme Court expressly observed, its holding concerned only the United States Constitution, and States are free to conclude that, as a matter of State law, a Batson error can never be harmless. See id. at 162.

---

[3]In Mejia v. State, 328 Md. 522, 540, 616 A.2d 356, 364-65 (1992), a limited remand was authorized to give the prosecutor an opportunity to explain the reasons for striking a Hispanic prospective juror. This Court stated: "[S]hould it appear that there is no reasonable possibility that the circumstances surrounding the striking of [the Hispanic prospective juror] can be reconstructed fairly, then a new trial may be required and the trial judge may order one." Id. at 541, 616 A.2d at 365.

Chief Judge Barbera brings up <u>Rivera</u> for the purpose of opining that, at some point, this Court should resolve the issue that the Supreme Court left open in <u>Rivera</u>—*i.e.*, whether a <u>Batson</u> error can be harmless under the Maryland Constitution. As Chief Judge Barbera expressly notes, however, this case cannot be a vehicle for deciding that issue, as "neither party has even touched this issue, much less presented to this Court a properly preserved argument on the issue." Chief Judge Barbera's Slip Op. at 10-11. The existence of the Supreme Court's holding in <u>Rivera</u> in no way undermines the conclusion that the correct outcome in this case is a new trial.

As a general rule, a trial judge should evaluate <u>Batson</u> challenges based on counsel's in-court conduct, and not rely on his or her recollection of counsel's performance in prior cases. Going forward, however, in some instances, the necessity for a pretrial determination concerning a trial judge's recollection of counsel's past practice of discrimination in employing peremptory challenges may arise; as such, I would provide the following guidance. The question of what a trial judge should do when he or she believes that counsel has a practice of exercising peremptory strikes in a discriminatory manner raises thorny issues. To the extent that a trial judge has recollections about counsel's behavior in past cases and deems the recollections relevant, the question becomes whether a disclosure should be made and what procedure the trial judge should follow in making the disclosure. Where a trial judge believes that counsel has, in prior cases, struck prospective jurors based on discriminatory grounds, as a threshold matter, the trial judge must decide whether to inform the parties of his or her belief, outside of the hearing of the prospective jurors. The trial judge must use his or her best judgment and evaluate all of

the relevant circumstances in determining whether to put the parties on notice of its belief—and, if so, what to communicate to the parties about its belief. From my perspective, during the jury selection process, a trial judge should not disclose information concerning counsel's prior use of peremptory strikes unless the trial judge is convinced that a demonstrable pattern of the discriminatory use of peremptory strikes exists, that there is a record of prior <u>Batson</u> challenges attendant to counsel's conduct, that <u>Batson</u> challenges have been sustained against counsel, and that the incidents are relatively recent in time.

Upon being informed of the trial judge's recollection regarding a past pattern of discrimination, if counsel for the other party wishes to pursue the matter, the trial judge may pause jury selection and, if necessary, conduct a brief hearing, at which the other party would have the opportunity to present evidence or argument, and the challenged party would have the opportunity to rebut the claim of a pattern of peremptory strikes based on race. The trial judge must refrain from acting both as a judge and as a witness by treating its opinion of counsel's past conduct as evidence or as conclusive of the issue. The trial judge must also consider whether, in light of its recollection of counsel's past conduct or practice of discriminatory use of peremptory strikes, disclosure of the circumstance or recusal is appropriate under Maryland Rule 18-102.11(a), also known as Rule 2.11(a) of the Maryland Code of Judicial Conduct, which states in pertinent part: "A judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned[.]"

## II. Sufficiency of the Evidence

Because the issue of the sufficiency of the evidence to support the conviction for attempted second-degree intent-to-kill murder is dependent upon the facts and circumstances of this case, the relevant trial testimony is briefly described below.

At trial, as a witness for the State, Detective Priscilla Rogers ("Detective Rogers") testified as follows. Detective Rogers observed a Kia Soul ("the Kia") run a stop sign. Detective Rogers attempted to initiate a traffic stop by using her vehicle's lights and siren, but the Kia kept going, thus starting a car chase. Multiple other law enforcement vehicles joined the pursuit. Eventually, while the Kia was in front of Detective Rogers's vehicle, Detective Rogers saw Andrew Kinn ("Kinn") on a bicycle on the side of the road. Detective Rogers estimated that her vehicle was two telephone poles away from Kinn when she first saw him. Kinn was wearing a bright yellow shirt, and multiple flags were flying from the back of his bicycle. Kinn saw the Kia, got off of his bicycle, and started moving toward a ditch beside the road. Despite having the opportunity to avoid Kinn, the Kia drove off of the road and onto the grass, where the Kia struck Kinn while going approximately sixty miles an hour. Kinn hit the Kia's windshield, then flew approximately fifteen feet and landed in the ditch. During her investigation of the car chase, Detective Rogers spoke with Keevin Robinson, one of the Kia's passengers, who told Detective Rogers that he and the other passengers saw Kinn and told the driver to look out.

As a witness for the State, Deputy Christopher Tolley ("Deputy Tolley") testified as follows. At one point during the car chase, Deputy Tolley was in front of the Kia, and saw Kinn as he tried to get off the road. The Kia moved to one side to get out from behind

Deputy Tolley's vehicle. Despite the fact that it would have been "very easy" for the Kia to avoid hitting Kinn by either turning onto the road or going into the ditch, the Kia continued going straight and struck Kinn.

As a witness for the State, Deputy Wendell Garrison ("Deputy Garrison") testified as follows. Deputy Garrison could see Kinn from three telephone poles away. Per protocol, the law enforcement officers had left the Kia an avenue of escape, as opposed to surrounding the Kia on all sides. Despite being able to go into the opposite lane—in which there was no oncoming traffic—the Kia struck Kinn.

The circuit court instructed the jury on second-degree intent-to-kill murder in pertinent part as follows:

> Second degree murder does not require premeditation or deliberation. In order to convict the Defendant of attempted murder in the second degree the State must prove: one, that the Defendant took a substantial step beyond mere preparation toward the commission of murder in the second degree; two, that the Defendant had the apparent ability at the time to commit the crime of murder in the second degree; and three, the Defendant attempted to actually kill [] Kinn.

The circuit court read Maryland Criminal Pattern Jury Instruction 3:31 nearly verbatim, stating in pertinent part: "[Y]ou may, but are not required to infer that a person ordinarily intends the natural and probable consequences of his acts or omissions." This statement is legally accurate. See Jones v. State, 440 Md. 450, 456, 103 A.3d 586, 589-90 (2014) ("[I]t is permissible to infer that a defendant intends the natural and probable consequences of the defendant's act." (Brackets, citation, and internal quotation marks omitted)).

"Evidence is sufficient to support a conviction where, after viewing the evidence in

the light most favorable to the State, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 454-55, 103 A.3d at 589 (emphasis in original) (brackets, citation, and internal quotation marks omitted).  At the risk of stating the obvious, the natural and probable consequence of hitting somebody with a car that is going sixty miles an hour is that the person will suffer fatal injuries. Here, Deputy Tolley testified that it would have been "very easy" for Spencer to avoid hitting Kinn.  Deputy Garrison testified that the law enforcement officers left Spencer an avenue of escape.  Robinson told Detective Rogers that the passengers in Spencer's vehicle saw Kinn and told Spencer to look out.  Kinn was wearing a bright yellow shirt, and multiple flags were flying from the back of his bicycle.  These facts provide ample evidence that Spencer saw and intended to kill Kinn.

If, during Spencer's attempt to flee law enforcement, he saw and intended for his car to strike Kinn, an inference can be made that he had the specific intent to kill Kinn.  In finding insufficient evidence to support the conviction, Judge Greene relies, in part, on the circumstance that Spencer was fleeing law enforcement officers to support a finding that Spencer lacked the specific intent to kill Kinn.  See Judge Greene's Slip Op. at 36. Spencer's desire or intent to flee is not mutually exclusive with his possession of the requisite intent to support a conviction for attempted second-degree murder.  Based on the testimony adduced at trial, taking the evidence in the light most favorable to the State, the evidence was more than sufficient to support the conclusion that Spencer saw and struck Kinn with the specific intent to cause fatal injuries.

For the above reasons, respectfully, I concur in part and dissent in part.

- 14 -

Circuit Court for Dorchester County
Case No. 09-K-13-15062
Argued: September 8, 2016

IN THE COURT OF APPEALS

OF MARYLAND

No. 94

September Term, 2015

_____

KEVON SPENCER

v.

STATE OF MARYLAND

_____

Barbera, C.J.
Greene
Adkins
McDonald
Watts
Hotten
Getty,

JJ.

_____

Dissenting Opinion by McDonald, J.

_____

Filed: November 29, 2016

I generally agree with the decision of the Court of Special Appeals and thus dissent from the decision in our Court. With respect to the *Batson* issue, the critical question is the merits of the Circuit Court's determination that the reasons proffered by defense counsel for his peremptory strikes at Step Two of the *Batson* analysis were a pretext for unlawful discrimination on the basis of race or gender. As Judge Greene's opinion notes at several junctures, because that determination depends largely on a trial court's assessment of the credibility of counsel, appellate review is very deferential. For the reasons set forth in Chief Judge Barbera's opinion, I cannot say that the trial judge's determination in this case was clearly erroneous. At most, I would allow a limited remand, as suggested by one of the opinions in the Court of Special Appeals, to amplify the record for appellate review. I make two other observations.

First, this case highlights, like our other recent foray into the world of *Batson* challenges,[1] how ill-equipped an appellate court is to review a trial court's resolution of such challenges. As in our prior case, we have no information concerning the overall demographic make-up of this jury venire or of the jury that sat at trial – information that is self-evident to a trial judge and counsel and that undoubtedly affects a trial judge's evaluation of counsel's credibility when a *Batson* challenge is raised. For that reason, as the Supreme Court observed in *Batson* itself,[2] trial courts are to be accorded "great deference" in their resolution of *Batson* challenges.

---

[1] *Ray-Simmons v. State,* 446 Md. 429 (2016).

[2] *Batson v. Kentucky*, 476 U.S. 79, 98 n. 21 (1986).

Second, the discussion in the trial court at Step Two of the *Batson* analysis illustrates how the use of preemptory strikes is at odds with how one would expect a justice system to operate. As Judge Greene's opinion relates, the trial judge insisted that defense counsel provide a "rational basis" for counsel's strikes. One might forgive the trial judge for believing that a justice system that is generally based on the application of reasoning minds to actual evidence would require a "rational basis" for striking a prospective juror. However, under the current system, an attorney need only come up with an explanation that is neutral on its face as to race, gender, and ethnicity; it need not be persuasive or even plausible.[3] The trial court's mistaken view of the Step Two standard ultimately did not matter, as it found at Step Three that the reasons given were a pretext for discrimination on the basis of race and gender.

In sum, the *Batson* analysis is not intuitive and appellate review is difficult and deferential. Whether it is effective in identifying strikes based on invidious discrimination is questionable. A better solution, in my view, would be to eliminate peremptory challenges altogether – a solution suggested by Justice Thurgood Marshall long ago and one that we can do by rule in Maryland, as I elaborated in our prior case.[4] The burden would be on counsel from the outset to explain a good reason for excluding a person from

---

[3] *Purkett v. Elem*, 514 U.S. 765, 767-68 (1995); *Edmonds v. State,* 372 Md. 314, 330 (2002).

[4] *Ray-Simmons,* 446 Md. at 454-56.

a jury.[5]  If all strikes were for cause, a reason that is neither persuasive nor plausible would carry no weight at all and would not be able to camouflage a discriminatory strike.

Finally, I agree with Judge Watts that, although the evidence supporting the murder charge was not overwhelming, if one views it in the light most favorable to the State, it was sufficient to send the murder count to the jury.

---

[5] It is notable that reversal of all of Mr. Spencer's convictions is sought here, not for any deficiency in the evidence or conduct of the trial or for any showing that any juror was not fair and impartial, but because his counsel was unable to exclude from the jury farmers, mechanics, and older citizens who have not had any run-ins with the law.

Circuit Court for Dorchester County
Case No. 09-K-13-015062
Argued: September 8, 2016

IN THE COURT OF APPEALS
OF MARYLAND

No. 94

September Term, 2015

_____

KEVON SPENCER

v.

STATE OF MARYLAND

_____

Barbera, C.J.
Greene,
Adkins,
McDonald,
Watts,
Hotten,
Getty,

JJ.

_____

Dissenting Opinion by Getty, J.

_____

Filed: November 29, 2016

I respectfully dissent from the Majority's opinion. On the *Batson* issue, I agree with Chief Judge Barbera that the trial judge was not clearly erroneous in finding that defense counsel's reasons for striking the jurors were pretextual. Thus, it was proper for the trial judge to reseat the jurors whom defense counsel sought to exclude. I join only Part I of Chief Judge Barbera's partial dissent.

On the sufficiency issue, I agree with Judge Watts that the evidence was sufficient to support the conviction for attempted second-degree murder. I join only Part II of Judge Watts's concurring and dissenting opinion.

Therefore, I would affirm the judgment of the Court of Special Appeals.